M. P. METCALFE *v.* JOHN M. McCUTCHEN ET AL.

1. AMENDMENT. *Error in declaration. Leave to amend after verdict.*

In an action of ejectment concerning land situated in "range 7," the declara-tion described the land as being in "range 6," but the evidence of either party was shaped to support a claim to land in "range 7," just as if the pleadings had so described it. The plaintiff did not discover the error in his declaration till a verdict had been rendered in his favor, when he asked leave, before entry of the judgment, to amend the declaration by changing the figure "6," where it occurred after the word range, to "7." The court refused to permit the amendment. *Held*, that the court below erred in not allowing the amendment.

2. SAME. *When reviewable on appeal. Sec. 1581, Code 1880.*

Sect. 1581 of the Code of 1880, in relation to Circuit Courts, provides that: "The court shall have full power to allow all amendments to any pleading, at any time before verdict, so as to bring the merits of the controversy between the parties fairly to trial, and may allow all errors and mistakes in the name of any party, or in the form of the action, to be corrected; and the court shall require all such amendments to be made on such terms, as to costs and delay, as may seem proper to prevent surprise or undue advantage. Either party may except to the decision of the court allowing or refusing amendments, and the same may be assigned for error." *Held*, that under this statute the action of the Circuit Court, in allowing or refusing any amend-ment, whatever, whether before or after verdict, is reviewable by this court, upon appeal.

3. Adverse Possession. *Claim founded on mistake.  Case in judgment.*
   A. is the owner of the west half of a certain section of land; and B. is the owner of the east half of the same section.  B. has been in possession of a part of the west half for more than ten years (the period necessary to establish a title by adverse possession), claiming title thereto in the belief that it was in the east half, and not intending to claim any part of the west half, but recognizing A.'s title to all of that half.  *Held,* that the possession of a part of the west half, by B. has been adverse and vests him with the title to that part, as against A., though he has claimed it in the mistaken belief that it was in the east half and embraced within the calls of his deed thereto.

4. Same.  *Fundamental fact.  Cause thereof.*
   It is the fact that possession is held and title claimed which makes a possession adverse, without reference to the cause thereof.

Appeal from the Circuit Court of Washington County.

Hon. B. F. Trimble, Judge.

This is an action of ejectment brought by M. P. Metcalfe and wife against John M. McCutchen and Susan P. Taylor; and from a judgment in favor of the defendants, M. P. Metcalfe appealed to this court.  The facts of the case, and the points in controversy are stated in the opinion of the court.

*W. P. & J. B. Harris,* for the appellant.

It appears by the first bill of exceptions that the court set aside the first verdict on the sole ground that the declaration and proof varied as to the number of the range.

"If the verdict on the first trial was improperly set aside, it will be our duty, without examining into the subsequent proceedings, to reverse the judgment from which this writ of error was prosecuted, and to order judgment to be entered on that verdict."  *Magee* v. *Magee,* 37 Miss. 150.  We ask the court to do this in the present case.

The defendant, speaking of the character of the occupation of the land in controversy, says, in his testimony, "that defendant, and those under whom he claims, never claimed to have any title to any other part of the section than the east half, and always recognized that plaintiff was the owner of the west half of section 31, and if the triangle of land in controversy was in the west half of said section, it had been

inclosed in defendant's [half] through mistake, and be-
cause of belief that it was part of it.'' This testimony
shows that the act of appropriation was in subordination
to the true line and title, and that it was never the
intention of the owners of the east half to establish a
hostile possession, or make a hostile claim against each other;
that the acts of ownership, so far as they might be considered
as evidence of an adverse claim, were made upon the condition
that the true line admitted it, and in subordination to the actual
title.   There is no feature of estoppel here.   No conscious mis-
leading silence, no fraud, and what is more, no injury inflicted.
The defendant has been benefited by the mistake he made.
We hold that neither in law nor morals can possession, how-
ever distinctly marked by features of ownership, under these
circumstances be held to give title or to bar a title.   More-
over, this mistake, a matter of frequent occurrence, was made
innocently, on a boundary line not marked out, by neighbors
not wishing to invade each other's rights and always willing to
recognize the true title and true line.   39 Miss. 737; Ang.
& Ames on Lim. 399, 400.   It is the intention to claim title
that makes the claim adverse.   In support of our position on
this point we cite *Brown* v. *Cockrell*, 30 Ala. 45; *Howard*
v. *Reedy*, 29 Ga. 154; *St. Louis University* v. *McCune*, 28
Mo. 481; *Green* v. *Harman*, 4 Dev. 163; *Cleveland* v.
*Flogg*, 6 Cush. 81; 56 Me. 265; 64 Me. 138.   These
cases proceed on no metaphysical distinction between motive
and design or intention, but on grounds which have been
accepted to explain human actions since the foundation
of the world; and that is where possession is taken and held
under a mistake as to the true limit of one's grant, not intend-
ing to assert ownership in conflict with any other rightful
title, it is a taking possession on condition which qualifies the
intent and takes from it the element of adverse possession.
The instructions given for the plaintiff on the first trial cor-
rectly announced the law.

The court below would not have disturbed the verdict, but for the mistake in the declaration. The judge seemed to think that there was no power in the court to correct the mistake. For the sake of good sense, and the reputation of courts of justice, and in the name of an enlightened and matured system of law, we maintain that this was error.

The matter of pleading, though it related to the identity of the subject-matter, which is material, was by common consent and the admissions and conduct of counsel and court, placed outside of the controversy and became immaterial. The controversy did not turn on the fact whether the land was in range six, but on boundary and adverse possession. The true description would not have varied the proof, varied the defence, nor would it have altered the rulings of the court. It is clear beyond the possibility of doubt, that the result would have been the same, if the figure seven had been in the declaration before verdict. The actual dispute was settled. The only question was, whether a plain misprision, a clerical error of the draftsmen, of the declaration, which, if left uncorrected, would destroy the consistency of the record of the judgment and thus render it a practical nullity by making it apply to something never in dispute and never settled, could be corrected on plain irrefragible evidence, in order that it might be available to both parties, to one for the points of the judicial settlement and to the other as defence against another suit for the same subject-matter. Was it necessary to displace the verdict which was right on the actual dispute in order to correct such a mistake? See *Lion* v. *Burtis*, 18 Johns. 509. There was always power at common law to correct mistakes of this kind at the term when the court had power over the cause, if there was that kind of evidence which could be safely taken. *Bailey* v. *Musgrove*, 2 Serg. & R. 219 ; 1 Tidd's Pr. 696. Gilbert's Com. Pl. 108 ; *Woodcock* v. *Porter*, 35 Me. 138 ; *Keller* v. *Sistrunck*, 7 Ga. 281. The correct principle is announced in *Rogers* v. *Kline*, 56 Miss. 808.

The error of the court in refusing the amendment is the

subject of revision on appeal, and it is one so palpable and so against right reason that it ought to be corrected. There was, therefore, no ground for a new trial on the first verdict. The court has the power to reverse and send the case back for amendment and judgment in accordance with the verdict, if it shall deem that course necessary.

*M. Marshall* and *Catchings & Ingersoll*, for the appellees.

1. The court erred especially in giving instructions for plaintiff and in modifying defendant's so as to convey the idea that if the fence was placed upon a line under the belief that it was the true line (which turned out to be a mistake), and if the defendant and those under whom he claims, thinking they were only claiming what belonged to them, claimed and exercised acts of ownership to that fence line, such possession was not adverse. We do not claim that where the fence is by mere inadvertence, or for convenience, placed beyond one's line, possession to it would alone show an adverse claim. But we claim that wherever the fence is so placed by mutual consent, or by one of the coterminous proprietors, to mark the line, and whenever the possessor claims, by declaration or unequivocal acts, that the fence is the boundary line, that he owns or holds for his own use up to the fence, that characterizes such holding as adverse, although the fence may be so placed under the mistaken belief that it was on the true line, and although the possessor did not wish to claim, and did not think he was claiming, beyond his own true line. By the terms of our proposition and by the facts in this case, the claimant's possession has all the incidents of an adverse possession, unless his possession, his acts of ownership, and his claim to the disputed parcel as his own, are to be nullified by the good faith of his claim. The converse of our proposition amounts to saying that one possessing with all the other elements of adverse possession holds for the real owner, because he honestly believes he is holding for himself. If that was so, the protection of the statute could be invoked only by a land pirate. It cannot be denied that this position cannot be maintained. The statute avails those who hold under void

titles, or those who hold under no title at all, to the extent of their actual occupancy. In support of our views upon this point we cite the following authorities : *Alexander* v. *Park*, 39 Miss. 737 ; *Bryan* v. *Atwater*, 5 Day, 188 ; *French* v. *Pearce*, 8 Conn. 439 ; *Abbott* v. *Abbott*, 51 Me. 584 ; *Otis* v. *Moulton*, 20 Me. 212 ; *Spaulding* v. *Warren*, 25 Vt. 328 ; *Melvin* v. *Proprietors of Locks*, etc., 5 Metc. 33 ; *Lincoln* v. *Edgecomb*, 31 Me. 345 ; *Hitchings* v. *Morrison*, 72 Me. 334 ; *Brown* v. *McKinney*, 9 Whart. 567 ; *Burrell* v. *Burrell*, 11 Mass. 297 ; *Robinson* v. *Phillips*, 65 Barb. 429 ; *Baldwin* v. *Brown*, 16 N. Y. 364 ; *Jones* v. *Porter*, 3 Penn. 134 ; 5 Pet. 440 ; *Enfield* v. *Day*, 7 N. H. 467 ; *Had* v. *Glidden*, 10 N. H. 401 ; *Smith* v. *Hosmer*, 7 N. H. 443 ; *McKinney* v. *Renney*, 1 A. K. Marsh. 343 ; *Smith* v. *Morrow*, 5 Litt. 210 ; *Hunter* v. *Chrisman*, 6 B. Mon. 465 ; *Crary* v. *Goodman*, 22 N. Y. 170 ; *Proprietors Kennebec Purchase* v. *Springer*, 4 Mass. 416.

The true distinction to be derived from all the cases, seems to me to be this : If the fence was established as the dividing line or held to as such, the occupant in fact claiming as owner to that line, such possession is adverse. But if the fence was so placed by mere accident, or inadvertence, or for convenience, and the proof does not show that the parties regarded the fence as the dividing line, and asserted ownership accordingly, such possession is not adverse. In the first mentioned class of cases, it is no more than to apply the general well established rules as to adverse possession. In the last mentioned classes it is simply to give effect to the general rule that mere occupancy (being presumed in law to be in subordination to the title, for no man will be presumed to be a wrong-doer, and in the absence of a right that will prevent it, the title will prevail) does not confer a right against the true owner.

2. This court will not reverse for the refusal of the court below to allow the proposed amendment after verdict. The reasons of the court below are immaterial. The only question is, did its act entitle the plaintiff to have its decision reversed?

The right to amend depends on the statute, and our statute does not cover the case of amendment after verdict. Sect. 1581 of the Code of 1880 relates in terms only to amendments before verdict. So does the following section (1582) as to amendments to cure a variance. So does sect. 2480, as to the description of the premises. And sect. 1727, which relates to objections after verdict, cures only formal defects.

The question is to be decided then by the common law. Whatever might be the power of the court at *nisi prius* to allow amendments (see Bac. Abr., tit. Amendment, and 1 Tidd's Pr., marg. p. 696, *et seq.*), the allowance thereof is a matter of discretion, and a refusal thereof is not assignable as error. 1 Tidd's Pr., marg. p. 697, note B, citing *Phillips* v. *Dana*, 1 Scam. 498; *Cartwright* v. *Chabiel*, 3 Texas, 261; *Waples* v. *McGee*, 2 Harr. 444; *Robinson* v. *Holland*, 2 Harr. (Mich.) 445. Amendments can be granted upon terms (*Smith* v. *Johnston*, 4 Harr. (Mich.) 541), which must be complied with. That is what the court below in effect did — exacted terms — a new trial.

COOPER, J., delivered the opinion of the court.

The appellant (plaintiff in the court below), is the owner of the west half of sect. 31, T. 19, R. 6 west, in Washington County, and the appellee (defendant below) is the owner of the east half of said section.

On or near a line running north and south, and dividing the section, but not extending through the entire section, a fence has stood for the past thirty years. To the extent of this fence the land on the defendant's side has been inclosed and cultivated for more than ten years prior to the institution of this suit by the defendant and those under whom he claims. The land east of a line drawn on a prolongation of the line of this fence is not arable, but during the time aforesaid, the defendant, and those under whom he claims, have exercised such acts of ownership as the character of the land admitted.

The character of the possession as to all the land is shown
by the evidence of the defendant, who testified that he, and
those under whom he claims, have been in the possession of
the *locus in quo*, claiming it as owners ; but that this claim has
been made because he and those under whom he claims hon-
estly believed that it was situated in the east half of the sec-
tion.    That neither he nor they ever claimed to be the owners
of any part of the west half of the section, and if the *locus in
quo* is in fact a part of the west half of the section, the claim
thereto had been made under a mistake of fact ; that he only
claimed to own the east half of the section, but, nevertheless,
claimed that the land sued for was in said east half.

The case was twice tried in the court below.    The declara-
tion, as originally filed, described the land as being in range six
west, instead of range seven west, as in truth it is.    This mis-
take was not discovered until after the jury had rendered a ver-
dict in favor of the plaintiff, when, and before the entry of the
judgment, the plaintiff asked leave to amend the declaration
by striking out the figure six and inserting seven after the word
range.    This the court refused to permit to be done, but en-
tered up a judgment on the verdict, and upon a motion by
the defendants for a new trial, granted the same and then al-
lowed the amendment to be made in the declaration.    The
plaintiff took a bill of exceptions to the action of the court in
refusing permission to make the amendment when asked, and
in granting a new trial to the defendant.    A second trial re-
sulted in a verdict and judgment for the defendant.

On the first trial the court instructed the jury in substance,
that if the defendant had been in possession of the *locus in
quo* for the period of time necessary to complete his title by
limitation, claiming title thereto, but that such possession was
held and title claimed because the defendant believed that
the land was within the calls of his deed, and never intended
to claim title to any land lying within the calls of the plain-
tiff's deed, then such possession and claim of ownership did

not constitute adverse possession, if in fact the land was within the calls of the plaintiff's deed and without those of the defendants'.

The defendants asked instructions announcing the converse proposition, which were refused.

On the second trial the court gave the instructions of the defendants and refused those of the plaintiff.

On each trial there were a number of instructions asked both by plaintiff and defendants, but the real controversy turned upon the question whether such possession, as is supposed by the instruction as stated above, was or was not adverse.

The court should have permitted the amendment of the declaration, though the verdict had been rendered when the application to amend was made.

Though amendments at so late a stage of the proceedings ought only to be allowed in cases in which it is free from all doubt that injury can be done to the opposite party, it is still within the power of the court, in such cases, to permit them, and where, as here, it appears that the parties have tried the cause upon the supposition that the pleadings were in fact such as they would be made by the amendment, the party in whose pleadings the error existed, ought to be permitted, even after verdict, to amend them so as to conform to the facts. Both the plaintiff and defendant had shaped their testimony to support their respective rights or claims to the land situated in range seven, where it really was, and by no possibility could the defendant be deprived of any fair legal advantage by an amendment of the declaration so that it would show the proper location of the land.

It is argued by counsel for the appellee, that sect. 1581, Code 1880, deals wholly with amendments made "before verdict," that the right given by that section to except to the decision of the court allowing or refusing amendments, applies only to such amendments as are spoken of in the section, viz.,

amendments made before verdict ; and that as to all others the common law prevails, and the refusal to permit them is not subject to review on appeal. This is restricting too much the the operations of the statute. Its effect is to make reviewable, on appeal, the action of the court in permitting or refusing any amendments whatever.

The court erred in not permitting the amendment to be made ; but if the instructions asked by the plaintiff on that trial did not correctly announce the law, the defendants were entitled to a new trial. Upon the question whether or not such possession as the defendants are shown to have had in this case, is adverse, the authorities are conflicting, and we are left to select that view which, upon examination, commends itself to our judgment. The decisions on both sides of the question are collected in the briefs of counsel ; we shall not attempt an examination of them in this opinion, but content ourselves with saying that we adopt the views of those courts which hold that that possession is adverse in which the holder claims, and intends to claim title, without regard to the fact that the possession and claim is held and made under an honest, but mistaken, belief that the land is within the calls of his deed. It is the fact that possession is held, and that title is claimed, which makes it adverse possession, or claim, or both, though they may have resulted from a mistake ; but it is their existence and not their cause that the law considers, and existing, they constitute adverse possession.

This view is ably sustained by Hosmer, C. J., in the case of *French* v. *Pearce*, 8 Conn. 439.

The judgment is affirmed.