## W. B. JONES ET AL. *v.* E. F. GADDIS.

1. ADVERSE POSSESSION. *Boundary acquiesced in.    Ten years occupancy gives title.*
   In case of adjoining plantations where a strip of land belonging to one is
   enclosed and cultivated as part of the plantation of another, the dividing
   line being fixed by a hedge, which is recognized by the parties as the
   true boundary, and the possession thus continues for a period of about
   thirty-five years, the original owner, on discovering the true line, cannot
   recover the strip.    After ten years holding, the occupant in such case
   acquires title by adverse possession.    *Metcalfe* v. *McCutchen,* 60 Miss. 145,
   cited and applied.

2. SAME.    *Entry under color of title.    Constructive possession.    Disseizin.*
   If after such adverse occupancy for more than ten years, the land is left
   vacant and unfenced, but is still under the general charge of the heirs of
   the occupant, and while it is thus vacant a purchaser acquires a valid
   title to the other plantation (his deed including said strip) and he enters
   thereunder, but does not take actual possession of said strip of land, his
   mere entry and possession of the other land will not draw to him the
   constructive possession of said strip so far as to disseize the other parties,
   and give him a title by lapse of time thereafter.

3. SAME.    *Possession under color of title.    Occupancy of part.    Disseizin of owner.*
   Where one enters under color of title, he is not considered a mere disseizor
   and confined to the land in his actual occupancy, but his possession is to
   be taken as extending to all the lands embraced in the deed under which
   he claims.    If, however, his title is void  as to a part of the land, the oc-
   cupation of that part to which he acquires title will not give him con-
   structive possession of the other land so as to disseize the real owner
   thereof.    To effect such disseizin, the partial occupancy must be of such
   character as to give rise to a reasonable presumption that the owner
   knows that the entry is under color of title to his land.

4. SAME.    *Temporary absence.    Animus revertendi.*
   Where, on account of the exigencies of war, cultivation of a plantation is
   practically abandoned and the parties in possession leave at intervals,
   but always *animo revertendi,* and they do return, having retained through-
   out general control of the property, there is no abandonment such as will
   interfere with their continued adverse possession of the land.

FROM the circuit court of Madison county.

HON. J. B. CHRISMAN, Judge.

Action of ejectment by appellee, Gaddis, against W. B. Jones

and Rulura Bradley. Trial by jury waived, and case tried by the court.

Judgment in favor of plaintiff for possession of the land in controversy, allowing the defendants $100 for improvements. Defendants appeal and plaintiffs prosecute a cross-bill. The facts as found by the court from the record are stated in the opinion.

*Smith & Powell*, for appellants.

It is admitted that the vendors of appellants are the heirs of W. L. Balfour. It is incontestibly shown that Balfour owned and occupied the land in controversy at least as far back as 1856, and he and those who claim under and through him have been in the open, adverse and continuous possession since that time. This possession has never been divested or interfered with by any one, and there was no attempt to do so until the institution of this suit in 1889.

Possession of land acquired by a party with the intention to possess it, is only lost by leaving it with the intention to abandon the same. Possession once acquired is not lost by a removal from the land, if the party removing has color of title, and by his acts manifests an intention still to claim and use it. *Harper* v. *Tapley*, 35 Miss. 506. Defendants and those through whom they claim, having held the land for more than ten years, acquired a perfect and indefeasible title. The plantation was surrounded with a well-marked enclosure, and the actual possession of any part was possession of the whole tract.

*Nugent & McWillie*, on the same side.

1. It is not disputed that Balfour died in possession of the land in controversy in 1857. His possession was by descent cast upon his heirs-at-law. He would be entitled to recover against any person other than the holder of a permanent title. *Spears* v. *Burton*, 31 Miss. 547; *Hanna* v. *Renfro*, 32 Ib. 125; *Mullen* v. *Kavanaugh*, an unreported case decided by this court. Appellants holding under the heirs are entitled to all their rights.

2. Shackleford and Balfour owned adjoining plantations, which were separated by a permanent hedge. All north of it being within the enclosed plantation of Balfour, which included the land in

controversy.  The hedge was recognized by these parties as the boundary as far back as 1850, and the parties held possession with reference to it, and so continued until within the last year or two, when, after a survey, a claim was asserted that part of the Shackleford land lay north of the hedge within the Balfour enclosure.  The statute of limitations presents an insurmountable barrier to plaintiff's claims, adverse possession under Balfour and his heirs having ripened into a complete title.

3. The temporary absence of the Balfour heirs during the war was not an abandonment of the possession of the land.  There was always the *animus revertendi*, and this was confirmed by their actual return.  *Hicks* v. *Steigleman*, 49 Miss. 385.  There was never an interruption in the actual possession of the plantation.  It has continued for nearly forty years under a claim that the hedge was the dividing line.  An abandonment must have been affirmatively shown.  In other words, it is incumbent on the plaintiff to show, not only the fact of non-occupation, but that a failure to occupy resulted from an intention to abandon.  *Mallett* v. *U. S. Co.*, 90 Am. Dec. 485; *Moon* v. *Rollins*, 95 Ib. 181; 40 Ib. 464 and notes; 62 Vt. 146; 36 Cal. 330; 52 Ib. 263; 14 Mo. 238.

4. It is shown that Balfour and Shackleford recognized the boundary line between their plantations, marked by the hedge so as to perpetuate it.  Even if this was not the true line, and if they were mistaken as to the real line of demarcation, after the great lapse of time, they are bound by the boundary line thus adopted. *Metcalfe* v. *McCutchen*, 60 Miss. 145.  The proper location of the dividing line by adjoining proprietors, on the faith of which valuable improvements are made, will conclude them and their successors in interest.  *Laverty* v. *Moore*, 33 N. Y. 658; *Jordan* v. *Deaton*, 23 Ark. 704; *Jacobs* v. *Moseley*, 4 S. W. Rep. 135; *Culbertson* v. *Duncan*, 13 At. Rep. 966; *Kuhns* v. *Fennell*, 15 Ib. 920; *Beaubien* v. *Kellogg*, 37 N. W. Rep. 694; *Moody* v. *Nichols*, 16 Me. 23.

And this rule applied with greater force when the possession continues according to the line fixed for the statutory period of limitations.  *Wakefield* v. *Ross*, 5 Mason, 16.

It is distinctly proved by Jones that Balfour up to the day of his death claimed all the land north of the hedge. See also *Burrell* v. *Burrell*, 11 Mass. 297.

*F. B. Pratt*, for appellee.

However defective Breck's title may have been, his deed in 1871 vested Allen with color of title. The proof shows that under this deed he entered into possession of the lands conveyed therein, and continued in possession until his conveyance to Gaddis, a period of sixteen years, and Gaddis has been in possession from November, 1887, to the present time. So we have had color of title for nineteen years before suit, accompanied by uninterrupted possession until 1884, a period of thirteen years, when the land in suit was enclosed with the Balfour place.

Where one enters under color of title, possession of part is possession of the whole. The possessor is not confined to a part of the premises in his actual occupancy, but his claim extends to all the lands embraced in the deed under which he claims. *Hanna* v. *Renfro*, 32 Miss. 125.

There need be no fences, or other improvements. It suffices that visible and notorious acts of ownership are exercised after entering under the claim of title. Angel on Lim., §§ 400, 410; Buswell on Lim., §§ 254, 259. Our title became perfect by limitation three years prior to our being disseized by defendants. *Hanna* v. *Renfro, supra.*

We concede that there was no constructive possession of this forty acres if it was in the possession of another person, but the record shows that there was no possession, adverse or otherwise, actual or constructive, on the part of any one until 1884.

In considering the nature and effect of the alleged adverse holding, it will be borne in mind that neither the defendants nor their vendors ever had any paper title or color of title.

It is conceded that Balfour never owned the land unless he acquired it by adverse possession. The record fails to show satisfactorily that he ever made any claim whatever to the forty acres, or that it was ever occupied or cultivated by him or his heirs. Occu-

pation of land confers upon the possessor no right unless his possession is under a claim of right antagonistic to the real owner. *McGee* v. *McGee,* 37 Miss. 138, quoting Angell on Lim., § 410.

It is a presumption of law that possession is in subordination to the rights of the owner, and it is therefore incumbent on the possessor claiming to hold adversely to show the adverse character of his possession. *Alexander* v. *Polk,* 39 Miss. 737; *Davis* v. *Bowmar,* 55 Ib. 671; *Dean* v. *Tucker,* 58 Ib. 487. The forty acres in controversy were not in the actual occupation of either party from 1869 to 1884. Where there is no actual possession, constructive possession is in him who has the paper title. Angell on Lim., § 410, and notes.

Where there is a mixed possession, the legal right is according to the title. Tyler on Ejectment, § 904. Possession, to be adverse, must be such as would give the owner a right of action. 37 Miss. 138. Tyler on Ejectment, § 888. There can be no constructive possession without color of title.

Great stress is laid upon the fact that the forty acres were enclosed by the hedge with the defendant's land. And it is claimed that this hedge, being visible, was notice to us of their claim, and that it constitutes a sufficient enclosure within the meaning of the law to constitute actual possession. Was it incumbent on plaintiff to plow up this hedge to prevent the statute of limitations from running against him? Had he not the right to do as he pleased with his own land, and to let it lie out to the end of time, so that he paid the taxes? Where one claims by adverse possession without color of title, he must show actual, visible and exclusive proprietorship, such as continual use. He must show a substantial enclosure and actual occupancy, definite, positive and notorious. Am. & Eng. Encl. of L., pp. 259, 260; Angell on Lim., 395; Buswell on Lim., 24.

It is not necessary that the plaintiff should show perfect title in order to recover against one who can establish no legal right. Tyler on Ejectment, 72, 73; *Hicks* v. *Steigleman,* 49 Miss. 377; *Kerr* v. *Farish,* 52 Ib. 102; *Lum* v. *Reid,* 53 Ib. 73; *Jones* v. *Sherman,* 56 Ib. 599.

Argued orally by *W. L. Nugent,* for appellants, and *F. B. Pratt,* for appellee.

WOODS, C. J., delivered the opinion of the court.

This was an action of ejectment brought by Gaddis for the s. ½ of n. ½ of n. ½ of s. ½ of section 8, township 8, range 1, in Madison county. The plaintiff claimed under title derived from Thomas Shackleford, and offered in support of this claim a deed from one Breck, the assignee in bankruptcy of said Shackleford, to one Allen, plaintiff's vendor, and, in addition, alleges entrance upon and occupation of this particular parcel of land, in addition to the other lands constituting the Shackleford plantation, for more than ten years.

Jones and his co-defendant below claim by virtue of the actual, open and adverse possession, for nearly thirty-five years, by W. L. Balfour and his heirs and their vendees, under the belief that the land in question was part of the Balfour plantation. They show that as far back as the year 1856 (how much earlier does not appear), Balfour claimed this particular lot, and had, before the date named, put a hedge around his entire plantation, including this particular piece of ground, and that up to the year 1859, the date of Balfour's death, he had cultivated and controlled it as a constituent part of his plantation; that Balfour's heirs and the purchasers under them have been continuously, notoriously and adversely in possession from the date of Balfour's death until the present day.

The multiplicity of questions touching the regularity of the tax sale of the land and the validity of the tax-collector's deed to the state, and the sufficiency of the certificate of the auditor of public accounts to show investiture of the title of the state in Shackleford; the validity or invalidity of the deed from Breck, Shackleford's assignee in bankruptcy, to Allen, the vendor of Gaddis, the plaintiff herein below; and the state of the title, as affected by the rights of Hill, to whom Shackleford conveyed the land in 1860, and out of whom the records in this case show no divestiture of title, and the rights of McMicken and Fearn, the trustees to whom Shackleford conveyed

the property in 1866, to secure his creditors, we pass by as matters of curious and interesting speculation merely, in view of the opinion which we entertain and the conclusion at which we have arrived.

Let us concede the validity of the deeds offered in evidence on the trial below by Gaddis, and the regularity of the proceedings by which these deeds were acquired, and let us also concede that Gaddis obtained a valid paper title to the land by virtue of the conveyance from Breck, Shackleford's assignee, to Allen, Gaddis's immediate vendor, in 1871, as well as to Shackleford's entire plantation, and the enquiry remains : how will the rights of those claiming under Balfour be affected ?

To answer this enquiry it becomes necessary to examine the attitude of Balfour and his heirs and their vendees, before and at the time of and subsequent to this sale by Breck, Shackleford's assignee, to Allen, the plaintiff's vendor.

As early as the year 1856 (how much earlier does not appear, as has already been said), we find W. L. Balfour in possession of this lot of land, claiming it, cultivating it as part of his enclosed plantation and exercising the usual rights of ownership over it. We find the dividing line between the plantations of Balfour and Shackleford (whether by agreement and consent, or by mistake, we do not know) had been so established and permanently marked by a hedge-row, as that the lot of land now in dispute was placed in Balfour's plantation, and inside the general hedge enclosing all Balfour's lands, and this condition remained undisturbed and uncomplained of until the death of Balfour in the year 1859. After Balfour's death we find his heirs still possessing and cultivating the land as their ancestor had done, and we find Hill, to whom Shackleford had sold his plantation in 1860, acquiescing in and recognizing the claim of the Balfours to the now disputed territory. We find that, during the continuance of the late civil war between the states, agricultural operations on the Balfour plantation were practically suspended, and the place itself, now and then, as the exigencies of active hostilities demanded, was abandoned. But we find, too, there was always the *animus revertandi* in the heart of the

refugees, and an actual return when the storm had swept by, and a re-possession of the abandoned home and domain. We find, with the close of the war, that the cultivation of the Balfour plantation practically closed, and, except in little patches (as the evidence denominates them), the once fertile and valuable lands have lain out, open and unfenced and untilled. We find in 1874 that the last Balfour ceased to personally look after and control the plantation, and that one Kearney was then put in possession and charge of the same, as agent of the Balfours, and that he took possession of all the Balfour lands, including the forty acres in controversy, and that he has so continued in possession ever since. We find that, in the year 1885, Kearney enclosed with a wire fence a part of the Balfour plantation, and that the entire lot in controversy was embraced in this enclosure. We find that the land in dispute was universally recognized in the neighborhood as a part of the Balfour plantation. We find no assertion of claim or right to the land on the part of Shackleford or Hill, or Allen, even at any time. We find Gaddis, the plaintiff, only asserting claim in the year 1889.

Having thus examined the attitude of the Balfour heirs and claimants, together with the circumstances marking their possession, let us turn to the alleged entry and possession of Allen, under his conveyance from Breck, assignee of Shackleford. We find that not only the .facts evidencing the claim and possession of the defendants are not disputed, but that it is affirmatively made to appear by plaintiff that Priestly, who always represented Allen, never was in actual possession, for he testifies that he does not know whether he ever so much as went on the lot of land, and in fact, he is unable to say that he even certainly knows where the land really lies. Allen himself is not shown ever to have seen the land; and Breck's deed to Allen was only put on record in the month of October, 1886.

Now, under the doctrine announced by this court in *Metcalfe* v. *McCutchen*, 60 Miss. 145, it is clear that Balfour or his heirs and vendees have acquired under their claim to, and posssession of the land a title thereto, unless the entry of Allen, under his

deed from Breck, assignee, upon the Shackleford plantation, drew to him the constructive possession of this particular lot, which was named in his said deed in connection with all the lands making up the Shackleford plantation, and so put an end to the claim and possession of the Balfours and their vendees. The rule is laid down, as stated by appellee's counsel, in *Hanna* v. *Renfro,* 32 Miss. 125, that "it is well settled that where a party enters under color of title, he is not considered as a mere disseizor, and confined to the part of the premises in his actual occupancy, but his claim extends to all the lands embraced in the deed under which he claims."

The rule is correct, but this limitation upon the rule must not be overlooked, viz., "if the title was void as to part of the land conveyed, the occupation of that part to which the grantor had title will not give the grantee constructive possession of the other part, to which he had no title, so as to disseize the real owner; and to divest the rightful owner of the whole tract described in the deed, the partial occupation must be of such a character as to give rise to a reasonable presumption that the rightful owner knows that the entry was made under color of title; and if this presumption be not reasonable, under the circumstances of the case, the disseizin will not extend beyond the actual occupation." Tiedman on Real Prop., § 696. See, also, *Bailey* v. *Carleton,* 12 N. H. 9; *Jackson* v. *Woodruff,* 1 Cowen, 286; *Osborne* v. *Ballew,* 12 Iredell, Law, 377; *Seigle* v. *Louderbaugh,* 5 Pa. St. 490.

Applying these principles to the facts of the case at bar, and conceding for the Breck deed to Allen all that appellee insists upon, it is nevertheless apparent that there was no disseizin of the Balfour claimants of the lot in question, and that the actual occupation of the Shackleford plantation proper by Allen, did not give him constructive possession of this particular parcel upon which he did not enter, and which the Balfours and their vendees continued to claim and occupy.

It follows, in our opinion, that, as against Shackleford and those claiming title derivatively from him, the claim of the Balfour heirs and their vendees has ripened into a valid title. And, conceding the validity of the tax-deed from Moorman, tax-collector, and the

sufficiency of the auditor's certificate to show a sale by the state to Shackleford (as to which we express no opinion), yet it is manifestly apparent, from an inspection of the record before us, on this point, that this title did not pass to Allen by the deed of Breck, assignee.

*Reversed and remanded.*

*F. B. Pratt,* for appellee, filed a suggestion of error, reviewing at length the authorities referred to in his brief, and citing others.

*Suggestion denied.*