## SCHULER *et al. v.* MCGEE.

[90 South. 713.   No. 22220.]

ADVERSE POSSESSION.  *Plaintiff holding lands for statutory period under be-
lief that it is within the calls of his deed obtains title.*

> Where a person is in the actual, open, continuous, adverse possession
> of lands for the statutory period and believes it is within the calls of
> his deed, he gets title thereto by adverse possession even though he
> claims only on the belief that it was embraced in his deed.  It is the
> actual open, continuous, exclusive, possession under claim of right
> that confers title in such cases.

APPEAL from circuit court of Warren county.

HON. E. L. BRIEN, Judge.

Suit by Miranda V. Blake Schuler and others against
W. H. McGee in ejectment.  Judgment for the defendant,
and the plaintiffs appeal.  Affirmed.

*Bryson & Katzenmeyer,* for appellant.

As to ADVERSE POSSESSION.  Section 3094, Code of 1906
(section 2458 Hemingway's Code), provides: "Ten years'
actual adverse possession by any person claiming to be
the owner for that time of any land, uninterruptedly con-
tinued for ten years by occupancy, descent, conveyance or
otherwise, in whatever way such occupancy may have com-
menced or continued, shall vest in every actual occupant
or possessor of such land a full and complete title," etc.

This section by its terms requires that the possession or
occupancy of the land shall be under claim of ownership
and gives no right to a person or possession of occupancy
merely, but only when such possession or occupancy is
under claim of ownership.

The defendant, McGee, declined and refused to state that
his possession or occupancy commenced under a claim of

ownership or that he ever claimed ownership of the land in question except as the law might give it to him.

Under the statute the claim of ownership must be co-incident and simultaneous with possession. It is possession under claim of ownership that gives title and not possession, independent of claim of ownership, or claim of ownership independent of possession. One might possess land forever without claiming to own it and the statute would never commence to run, or one might claim to own land forever without possession and the statute would not commence to run. The running of the statute must be under claim of ownership coupled with adverse and exclusive possession. Under McGee's testimony the unity of the two is lacking. While some of the witnesses testified that Mr. McGee claimed to own the land and that they never heard it spoken of otherwise than as Mr. McGee's land, that they rented from Mr. McGee and that he had dominant possession of the same none of these could, however, in the nature of the case testify as to whether Mr. McGee's possession commenced under claim of ownership and if it did not when thereafter did he commence to claim ownership of it?

In *Peabody* v. *United States,* 175 U. S. 546, 44 L. Ed. 267, Justice Peckham said: "A grant, therefore, would not be presumed even upon proof of exclusive and uninterrupted possession, so long as it was entirely consistent with the evidence produced in the case, which shows that it originated in a mere license, and there is no proof from which it can be claimed that its character changed from that of a licensee, to that of one in possession adversely and under a claim of title by a grant from the government."

In the case of *Kirk* v. *Smith,* 9 What. (U. S.), 6 L. Ed. 81, Chief Justice Marshall said: "One of these (rules), which has been recognized in the courts of England, and in all others where the rules established in those courts have been adopted, is, that possession to give title, must be adversary. The word is not, indeed, to be found in the statutes; but the plainest dictates of common justice require

that it should be implied. It would shock that sense of right which must be felt equally by legislators and by judges, if a possession which was premissive and entirely consistent with the title of another, should silently bar that title. Several cases have been decided in this court, in which the principal seems to have been considered as generally acknowledged; and in the State of Pennsylvania particularly, it has been expressly recognized. To allow a different construction, would be to make the statute of limitations a statute for the encouragement of fraud, a statute to enable one man to steal the title of another by professing to hold under it. No laws admit of such a construction."

·   ·   ·   ·   ·

In 2 C. J. 124 we find the rule stated as follows: "So title cannot be acquired by holding the land 'exclusively.' The reason for this is that possession may be exclusive and yet not hostile. Hostility of possession cannot be assumed, as a matter of law, from mere exclusive possession, no matter how long continued."

·   ·   ·   ·   ·

In the case of *McGaughn* v. *Young*, 85 Miss. 277, this court in an opinion by Judge TRULY, said: "In order to constitute adverse possession the occupancy must, generally speaking, be visible and notorious and with intent to claim title as against the world." And again: In *Gillespie* v. *Magruder*, 92 Miss. 511, Judge MAYES speaking for the court said: "The question is, conceding that Mrs. Gillespie claims a strip of land that belongs within the calls of the deed made to Magruder by Geo. W. Carlisle and others, has she held the land in controversy for the statutory period, claiming it as her land, asserting ownership of it, and claiming it as against all parties?"

Many other decisions might be cited to the same effect but the foregoing seems to establish beyond cavil: 1st. That possession must be coupled with claim of ownership, and 2nd. That the two must run concurrently and simultaneously for the full period of ten years in order to give

title under the statue. One without the other cannot give title.

*Anderson, Vollor & Kelly,* for appellee.

The contention of counsel representing the plaintiff hinges altogether upon one single fact, as he claims, that the defendant, McGee, declined and refused to state that his possession or occupancy commenced under a claim of ownership or that he ever claimed ownership of the land in question except as the law might give it to him.

This contention strikes us as a mere quibbling with words. Mr. McGee went into possession of this land with his tenant Sophronia Carr, or perhaps before that time and she testified that when she became Mr. McGee's tenant she lived in a house that has since rotted away, that a son was born to her on the place, and that this son is now over forty years of age. Who was claiming the ownership of the land at that time? Mr. McGee who rented the land to Sophronia Carr? Mr. McGee, and Mr. McGee was exercising all of the rights of ownership from that time on until the old house in which Sophronia Carr lived rotted down about fifteen years prior to the filing of this suit in ejectment and continuing up until 1919 when Henry Blake the agent of the plaintiffs, cast his covetous eyes upon the land, had it surveyed by Mr. Paul Polk, and then made his claim and attempted to enforce it by this suit.

If Mr. McGee's claim of ownership is not satisfying to the very technical ideas of a claim of ownership under adverse possession to counsel for appellant we submit that the claim of ownership made for him by Blake, his manager and the old tenants of Mr. McGee should be all and over sufficient.

Mr. McGee, the plaintiff in the court below, believed that this land was his own. Mr. Blake believed the same thing. Harris did likewise, and all of the tenants who occupied the land during the forty years period were of

the same opinion.   If Mr. McGee was not claiming the land to be his own why did all of these people believe that he was doing so?   Mr. Polk made a survey of the land which survey I am sure Mr. McGee was never convinced was correct, and that he went to his death believing that the title to the land was rightfully his.   He was in possession of the land with Blake's acquiescence through many years over and above the statutory period, and was always exercising in every way the rights of ownership that legalized the claim of ownership that he made at the trial.

No other meaning can be ascribed to the testimony of Mr. McGee than that he was claiming the land at the time of the trial, if his ownership was denied, because the law protected his rights and claims of the thirty to forty years of adverse and undisputed possession, use, occupancy and ownership.

The cases cited by counsel for appellant are sound and can not be contended against.   All of them state correctly the rules of law governing title by adverse possession. Particularly is this true of the case of *McGaughn* v. *Young,* 85 Miss. 277, in which Judge TRULY says: "In order to constitute adverse possession the occupancy must, generally speaking, be visible and notorious and with intent to claim title as against the world."

It strikes me that these words of Judge TRULY might aptly apply in this case.   Mr. McGee had adverse possession for from thirty to forty years by "actual occupancy" supervision and control; that his occupancy "was visible and notorious and with intent to claim title as against the world."

We submit that the action of the trial court in granting a peremptory instruction should be affirmed upon the testimony offered on both sides of this case which shows clearly that for forty years adverse possession by appellee was held by occupancy; that was "visible and notorious" and was held "with intent to claim title against the world."

Ethridge, J., delivered the opinion of the court.

The appellants brought a suit in ejectment against McGee for a strip of twenty-two acres of land described in the declaration. The defendant pleaded the statute of limitation, asserting title thereunder.

It is contended by the appellant that the defendant's evidence is insufficient to show that he was in possession claiming title by adverse possession against the world.

There is undisputed proof that he was in possession of the land for a much longer period than ten years. The answers relied on by the appellant to sustain their contention that he was not claiming the land were as follows:

"Well, I have been in possession of that particular piece of land that they claim, as I understand it, more than thirty years; perhaps I have been in possession of that land thirty years. . . .

"Q. This particular piece of land, you say, you have been in possession of it, what time? A. More than fifteen years, and have every reason to believe from my testimony here and the testimony of some of the tenants it has been more than thirty years. . . .

"I would state at this time I am assuming my right only to the land my deed calls for from the county, and the other land has not been in my possession more than fifteen years, if it is acquired under the law, that's all. . . .

"A. Well my recollection is, I had been in possession of it by reason, as I told you awhile ago for—for the same reason, more than thirty years. I remember distinctly the houses I replaced by new ones. The houses are there right now; they were worn out. . . .

"Q. Mr. McGee, do you claim to own any land there beyond what your deed calls for? A. I claim to understand, under the law as I understand it, that I own any land I have had in my possession more than fifteen years, or ten years as far as that matters.

"Q. You claim, if you have had any of that land in your

possession for more than ten years, you claim to own that? A. I claim it from my general knowledge of the law.

"Q. State to the jury point-blank whether or not you claim to own land formerly owned by Blake and now involved in this lawsuit. A. Only such an amount as the law gives me; if the action of the law doesn't give me anything in that regard, I don't claim to own it. . . .

"Q. You decline to say 'Yes' or 'No' as to whether you claim to own any of the Blake land involved in this suit. A. I don't claim to own any of the Blake land, except such as might have formerly belonged to Mr. Blake, and except what came into my possession under the law. . . .

"Q. What does your deed call for? A. My recollection is it is the west half of the southeast one quarter of section 18, township 17, range 4 east.

"Q. It is the west one-half of the southeast one quarter of section 18, township 17, range 4 east, in this county, Warren county? A. That's better to refer to the map (referring to the map). My recollection is it is the west one-half of the southeast one-quarter. . . .

"Q. That's the land you pay taxes on A. Yes, sir.

"Q. That's the land you claim to own? A. Yes, sir.

"Q. You bought that in 1871 from the county? A. Yes, sir; I think about '71."

It appears from the contentions and from the evidence that McGee thought the land in controversy fell within the calls of his deed, and that he was paying taxes according to his deed. It appears without dispute that he was in possession of the land in controversy, and we think his testimony shows that he was the owner of it. It is not necessary for the land to actually be within the calls of the deed if the occupant believes it is within the calls of his deed and claims under the deed. The principles announced in *Metcalfe* v. *McCutchen,* 60 Miss. 145, *Jones* v. *Gaddis,* 67 Miss. 761, 7 So. 489, and *Greer* v. *Pickett,* 90 So. 449, cause No. 22321 of this court, decided January 30, 1922, control this appeal, and the judgment of the court below will be affirmed.

*Affirmed.*