Alexander *v.* Hyland.

May 19, 1952.

No. 38346 (58 So. (2d) 826)

Bodron, Nichols & Levy, for appellant.

**Brunini, Everett, Grantham & Quin,** for appellee.

**Kyle, J.**

John L. Hyland, as complainant, filed suit in the Chancery Court of Warren County against Mrs. Josephine Alexander, defendant, for the cancellation and removal of clouds on his title to approximately 16½ acres of land situated in the southeast corner of Section 35 and in the western part of Lot 4 of Section 34, in Township 14, Range 3 East, and to confirm his title to said tract of land.

In his bill of complaint the complainant alleged that he was the owner by record title of that part of said tract of land that lies in Lot 4 of Section 34, and that he was the owner by adverse possession for the statutory period of

that part of said tract of land that lies in Section 35. The defendant in her answer admitted the ownership of the complainant of that part of the tract of land described in the bill of complaint that lies in Section 34, but denied both the ownership and possession by the complainant of that part of said tract that lies in Section 35, and she denied that she had ever asserted claim to any part of said tract of land that lies in Lot 4 of Section 34. The defendant filed with her answer a cross bill in which she asked for the cancellation of the complainant's claim to that part of the tract of land described in the bill of complaint that lies in Section 35, and that her title thereto be confirmed. Only the surface ownership of the above described land is involved in this litigation.

The special chancellor heard the case on the pleadings and proof and entered a decree in favor of the complainant in which he adjudged that the complainant, John L. Hyland, was the owner by record title of that part of the tract of land described in the bill of complaint that is situated in Section 34, and that he was the owner by adverse possession for the statutory period of that part of the tract of land described in the bill of complaint that is situated in Section 35.

Much of the testimony in the record is undisputed. The complainant, John L. Hyland, owned the tract of land in the western part of Section 34 known as the "Bobb's place", and the defendant, Mrs. Josephine Alexander, owned the adjoining tract of land lying south of Hyland Bayou in Section 35. Section 34 lies immediately east of Section 35. The complainant, who is a civil engineer and surveyor by profession, and Paul M. Polk, the civil engineer and surveyor who testified as a witness for the defendant, both testified that there were errors in the government field notes of the original survey of that part of the township in which the land in controversy is located, and that Section 34 could not be platted from the field notes so as to effect a complete enclosure of the area designated on the township map as

Section 34, and for that reason the western boundary line of Section 34 and the eastern boundary line of Section 35 could not be located by the use of the field notes or any government markers which could be found. Both of the civil engineers testified that Section 34, when surveyed according to the government field notes, would not "close." And it was the opinion of both civil engineers that the issues involved in this litigation would have to be determined upon the basis of the proof of adverse possession.

The complainant, John L. Hyland, testified that he was born in 1894, and had been familiar with the lands owned by him in Section 34, known as the Bobb's place, since 1905; that his father, John L. Hyland, Sr., had acquired title to the land in 1905; that the lands in Section 35, lying immediately west of the Bobb place, had been owned at one time by the complainant's father and his two brothers; and that the land in Section 35 lying south of the Hyland Bayou had been owned by Dr. C. S. Hyland, the defendant's father, for many years prior to 1939, when Dr. Hyland conveyed the land to his daughter, Mrs. Josephine Alexander, the defendant herein. The complainant testified further that there was an old fence running from a point on Hyland Bayou in Section 35 in a southerly and southeasterly direction to the point of intersection with the tract of land known as the Kinzer tract, and that this old fence had been recognized and treated as the boundary line between the Bobb place and the land owned by the defendant throughout the entire time that he had been familiar with the lands. The complainant testified that the old fence which is located on the map identified as Exhibit 1 to the complainant's testimony and referred to in the record as the fence running from point "A" to point "S", had been erected prior to the time his father acquired title to the Bobb place in 1905, and had been maintained as a boundary line fence for a period of more than forty years before the present controversy arose. The com-

plainant testified that the old field lying immediately north and east of the fence as shown on the above mentioned map, about half of which lies within the disputed area, had been cultivated by tenants under John L. Hyland, Sr., and his lessees, during the period prior to 1918, and by tenants under the complainant's brother, William S. Hyland, thereafter until 1930. The complainant testified further that after the death of his brother in 1930, the complainant turned the Bobb place into a cow pasture, and that he and his brother-in-law, Kellogg Bobb, pastured cattle on the land, including the parcel of land in controversy, from 1931 to 1944; that the fence which separated the Bobb place from the land owned by Dr. C. S. Hyland had been maintained and repaired from time to time by the complainant's father during his lifetime, and by the complainant's brother and the complainant himself after the death of their father, until 1948, when a part of the old fence was demolished by a timber cutter; and that Dr. C. S. Hyland, the defendant's father, who owned the land lying immediately west of the old fence, until he conveyed the same to the defendant in 1939, never claimed that the complainant's cattle were on his land, and that the defendant never asserted that complainant's cattle were on her property, or that the old fence was not the boundary line between them, until sometime during the year 1946.

The complainant admitted on cross examination that the land embraced in the deed of conveyance of the Bobb place to John L. Hyland, Sr., had been assessed as a part of Section 34, Township 14, Range 3 East.

The complainant's testimony relating to the location of the old fence, and to the possession, occupation and use of the land lying immediately east and north of the old fence, by his father from 1905 until his death in 1918, and by the complainant and his brother, William S. Hyland, from 1918 to 1930, and by the complainant after his brother's death in 1930, was corroborated by the testimony of Kellogg Bobb and G. E. Bobb, who were

the brothers of the complainant's wife and had known the tract of land since the time that the complainant's father acquired title to the property. Kellogg Bobb testified that the old field was in cultivation in 1909, and that he managed the farming operations on the Bobb place for Mr. Gus Kimberly, a tenant of John L. Hyland, Sr., in 1917, and that the old field was cultivated by a colored tenant under Mr. Kimberly during that year; that he saw cotton and corn growing in the field during the years that William S. Hyland had the land in his charge, and that he had pastured cattle on the land from 1931 to 1944. During all of those years there was a barbed wire fence around the entire Bobb place, and he had never heard of anyone claiming any of the land in dispute other than the owners of the Bobb place, and the old fence mentioned above had always been considered as the dividing line between the Bobb place and the land owned by Mrs. Alexander. G. E. Bobb testified that he had known the Bobb place since 1900; that he worked on the land from 1921 until 1923; that the Bobb place was fenced all the way around for thirty years; that the fence near the old field divided the Bobb place from the lands owned by Mrs. Alexander; that the fence was in good condition as far back as he could remember; and that cattle were grazed on the land in the disputed area.

A. G. Alexander, the defendant's husband, was the chief witness for the defendant. He testified that he was familiar with the land in controversy; that it was rugged land and there were numerous ravines. Timber had grown up on the land that at one time had been a cultivated field. He stated that the old fence referred to by the complainant and his witnesses was a meandering fence that followed the ridge and finally played out about the center of the west boundary of the land in controversy. He stated that he had never considered the old fence to be the boundary line between Mrs. Alexander's land and the John L. Hyland land. He said that the old fence appeared to be an abandoned fence, and that it was not

repaired until three or four years before the trial. He stated that the complainant and Kellogg Bobb did not pasture any cattle on the land in controversy between 1939 and 1944, to his knowledge. He stated that he had pastured cattle on the Alexander land at various times since his wife acquired title to the land in 1939.

Mrs. Josephine Alexander, the defendant, testified that Dr. Claiborne S. Hyland was her father, and that he was a brother of John L. Hyland, Sr., and that the relationship between the two brothers was friendly and that they trusted one another. She also testified that she was assessed with the south part of Section 35, Township 14, Range 3 East, and had paid the taxes on the same according to that description; and that it was her understanding that the land described in the tax receipts included the land in controversy.

Cleveland Allen testified that he was a tenant on Dr. Hyland's land for a period of approximately thirty years, and that he had seen the old crooked fence from time to time during all of those years; that the old fence had not been kept in good condition, so as to keep cattle from going through it in some places; and that the old field lying north and east of the fence had not been plowed, so far as he could remember, during the time that he lived on Dr. Hyland's land. He testified that mules and cattle belonging to the tenants on Dr. Hyland's place went over on the land east of the old fence. He did not know where the boundary line was located. Charlie Hall testified that he had been a tenant on Dr. Hyland's place for many years, and that he continued to live on the place two years after Mrs. Alexander acquired title to the property. He was familiar with the old fence, and also the new fence that Mr. Alexander had erected two or three years before the date of the trial. He stated that the old fence was there when he first moved on Dr. Hyland's place. He stated that he had helped a timber cutter cut timber on Dr. Hyland's land at one time, and that they cut across the old fence, and that nobody told them

not to cut timber over there; that the fence was in bad condition when he left Mrs. Alexander's place, and that during the time that he could remember the fence was not in condition to hold cattle. He stated that he did not remember anybody cultivating the old field lying immediately east of the fence.

The appellant's attorneys in their brief contend that the evidence was insufficient to show that the complainant's possession of the land in the disputed area was hostile to the title of the record owner, and that the proof was not sufficient to show that the complainant or his predecessors in title had actual possession of all of the land in controversy; that the proof was insufficient to show the actual location within the disputed area of the field claimed to have been cultivated by the complainant and his predecessors in title, or the area used for pasture after cultivation ceased; and that the chancellor failed to fix the location of the section line between the two sections.

It is not necessary that we undertake to discuss these several contentions in detail. We think that the evidence is sufficient to support the findings of the special chancellor, and that the decree of the lower court should be affirmed. There is some conflict in the testimony relating to the condition of repair of the old field fence which apparently separated the land known as the Bobb place from the land owned by Dr. Hyland and later owned by his daughter, Mrs. Alexander; and there is some negative testimony, as shown above, to the effect that the old field was not actually cultivated at any time during the thirty-year period immediately preceding the trial. But the testimony of the complainant and his two brothers-in-law, all of whom testified as to facts within their own personal knowledge, was sufficient to establish the complainant's title by adverse possession under Section 711 of the Code of 1942.

The lack of knowledge on the part of the complainant and his predecessors in title of the true location of the

boundary line between Sections 34 and 35, and the inability of surveyors to establish the true boundary line by a proper survey based upon the government field notes, did not prevent the appellee or his predecessors in title from acquiring title to the land by adverse possession, nor does it matter that the possession and occupancy of the land by the appellee and his predecessors in title was founded upon the mistaken belief that the land in controversy was within the calls of their deed.

In the case of Metcalfe v. McCutchen, 60 Miss. 145, and Jones v. Gaddis, 67 Miss. 761, 7 So. 489, the Court held that █ even though a party has claimed the land in controversy as being within the calls of his deed and has relied upon his deed as the foundation of his claim, when in fact the land was not within the calls of his deed, yet, if he occupied the land for the statutory period under the claim that it was his own and was embraced within the calls of his deed, he is entitled to recover on the ground of adverse possession; that it is the fact of adverse possession under the claim of right for the statutory period that establishes title. In its opinion in the Metcalfe case, the Court said: "We adopt the views of those courts which hold that possession is adverse in which the holder claims, and intends to claim title, without regard to the fact that the possession and claim is held and made under an honest, but mistaken, belief that the land is within the calls of his deed. It is the fact that possession is held, and that title is claimed, which makes it adverse possession, or claim, or both, though they may have resulted from a mistake; but it is their existence and not their cause that the law considers, and existing, they constitute adverse possession."

In the case of Evans v. Harrison, 130 Miss. 157, 93 So. 737, 738, the Court held that where a person enters into the possession of land under the belief that it lies within the calls of his title deed, and occupies it adversely against the world for the statutory period under such belief, he will acquire title thereto, although it is shown

later that the land does not lie within the calls of his deed, but lies within the calls of the deed of his adversary, who has paid no taxes thereon during the entire period of the adverse possession. In that case the Court said: "The decisions of this court fully sustain the doctrine that it does not make any difference whether the land lay within or without the call of the title deed of the person in possession, where he in good faith, though mistakenly, thinks the land lies within the calls of his own deed, when in fact it actually lies within the calls of his adversary's deed. This has been distinctly held by this court in a number of cases."

In the case of Daniels v. Jordan, 161 Miss. 78, 134 So. 903, 904, the Court said: "It is the fact of adverse possession and a claim of ownership for the statutory period that confers title, and not the real fact as to the existence of the line, nor does the fact of the payment of taxes by the plaintiff, during this period, on the land by proper description, alter the defendant's rights of adverse possession. Jones v. Gaddis, 67 Miss. 761, 7 So. 489; Greer v. Pickett, 127 Miss. 739, 90 So. 449; Schuler v. McGee, 127 Miss. 873, 90 So. 713; Evans v. Harrison, 130 Miss. 157, 93 So. 737."

In the case of Crowder v. Neal, 100 Miss. 730, 57 So. 1, the Court again applied the rule laid down in Metcalfe v. McCutchen, supra, and in that case the Court said: "It is manifest from the evidence that Mrs. Gunning, while in possession of this land, intended to, and did, claim it as her own under an honest, but mistaken, belief that it was within the calls of her deed. Her possession was therefore, adverse. Metcalfe v. McCutchen, 60 Miss. 145. That she would have surrendered possession, had she known that the land was not within the calls of her deed, is immaterial; for the character of her possession is determined, not by what she would have done, had this fact been known to her, but by what she actually did while she was in possession." And the Court held in that case that the possession of the appellant who

was Mrs. Gunning's grantee, could be tacked to that of Mrs. Gunning so as to create title by adverse possession in the appellant.

The appellant's attorneys say, however, that the complainant did not show color of title, and that under the rule laid down in the case of Page v. O'Neal, 207 Miss. 350, 42 So. (2d) 391, the complainant should have been required to prove the exact location of the old field, which constituted a part of the disputed area, and the part of the land that was used for pasturage after cultivation ceased, and that the complainant failed to make such proof. But this contention is without merit. All of the lands in the disputed area had been separated from the Dr. C. S. Hyland tract by the old fence for a period of forty years. The area which had been cultivated was shown on the plat introduced in evidence as an exhibit to the testimony of the complainant; and the entire tract had been included in a pasture upon which the complainant and Kellogg Bobb had pastured cattle from 1931 to 1944. The complainant's evidence was sufficient to establish title by adverse possession in John L. Hyland, Sr., and his heirs prior to 1930, and the defendant's evidence was clearly insufficient to show a disseizin of the complainant after the death of his brother, William S. Hyland, in 1930, even though no part of the land in the disputed area was cultivated after that year. Jones v. Gaddis, supra.

We think that the decision of the special chancellor is amply supported by the evidence, and the decree of the lower court is therefore affirmed.

Affirmed.

**Roberds, P. J.**, and **Hall, Arrington** and **Ethridge, JJ.**, concur.