## A. C. CROWDER and MRS. MATTEE CROWDER v. MRS. NANCY B. NEAL.

[57 South. 1.]

1. ADVERSE POSSESSION. *Acts constituting.* *Tacking possession.*

Where a purchaser enters into possession of a tract of land claiming it as her own under an honest but mistaken belief that it was within the calls of her deed, her possession was adverse, and the fact that she would have surrendered possession had she known that the land was not within the calls of her deed is immaterial.

2. ADVERSE POSSESSION. *Tacking possession.* *Privity of possession.*

In order that one adverse possession may be tacked to another there must exist privity of possession between the holders thereof, but such privity may be created by any conveyance, agreement or understanding, that has for its object the transfer of possession and is accompanied by a transfer in fact.

3. ADVERSE POSSESSION. *Tacking possession.* *When authorized.*

Where a purchaser in actual possession, claimed land as her own not included in the calls of her deed, and conveyed the land by similar description, together with the improvements and appurtenances, and turned over the possession to her grantees, and the parties intended that all of the land claimed should pass by the deed. In such case the possession of the purchaser and her grantee could be tacked to create title by adverse possession.

4. ADVERSE POSSESSION. *What constitutes.*

Where a purchaser in possession of land under a deed claimed title to the land as within the calls of her deed when in fact it was not within such calls, the character of her possession as adverse was not changed because she obtained permission from the owner of the adjacent lot, of which the portion claimed adversely was a part, to use the whole lot for a pasture, and did for a time use it for a cow pasture.

APPEAL from the chancery court of Hinds county. HON. G. G. LYELL, Chancellor.

Suit by Mrs. Nancy B. Neal et al. against A. C. Crowder and wife who filed a cross bill. From a decree for complainants, defendants appeal.

Prior to February 18, 1895, John W. Robinson was the owner of a certain lot situated in the city of Jackson, described as follows: The south half of the north half of two-acre lot No. 3, according to Daniel's official map. This property fronted east eighty-three feet on State street, and ran back between parallel lines to President street; the southern boundary being George street. The length of the block, as shown by the official map, is three hundred and twenty feet. At that time, however, there were no sidewalks on President street or George street adjoining this property, and this lot had a fence around it, which extended out eight feet on President street, over what was afterwards laid out by the city as a sidewalk. On the date above named Robinson sold to Mrs. Gunning the east half of said lot; the deed in question describing the property as the east half of the south half of the north half of two-acre lot No. 3, and giving the dimensions as being eighty-three feet front on State street by one hundred and sixty feet deep. The transaction was made with Mrs. Gunning's husband, and he afterwards built a fence around what he considered half of the lot and proceeded to improve it. In running his lines, he took half of the inclosed lot, which was in fact three hundred and twenty-eight feet in length, thus giving him a lot eighty-three feet by one hundred and sixty-four feet. He built a fence around this lot, and in July of the same year erected a handsome residence. He built outhouses, a stable, a servant's house, and added other improvements, including fruit trees. These improvements extended to the back fence, which was one hundred and sixty-four feet from the eastern boundary of the lot on State street. Mr. Robinson and Mr. Gunning are both dead; but it seems clear from the record that Mr. Gun-

ning, in running his lines, took half of the lot and that until the institution of this suit thought he was only taking one hundred and sixty feet. However, the improvements and occupancy extended to the one hundred and sixty-four-foot line.

On September 21, 1903, Mrs. Gunning sold this lot to appellants, describing it just as it was described in the deed from Robinson to her, and adding, "together with all the improvements and appurtenances therein situated." Appellants immediately entered into possession of the property, and have occupied it continuously since. Their occupancy began at the moment Mrs. Gunning moved out. Appellants did not know the dimensions of the lot they were actually occupying, but in making the purchase the lot was pointed out to them as being within the inclosure and including all improvements, such as the servant's house, stable, fruit trees, etc., which extended to the back fence. The premises were delivered to appellants just as held and occupied by Mrs. Gunning, and appellants made certain additional improvements, such as rebuilding the back fence, and filling in low places in the lot, and adding to and improving the outhouses. On February 8, 1909 (Robinson being dead), the special commissioner of the chancery court sold to appellee Mrs. Neal the west half of the south half of the north half of two-acre lot No. 3, giving the dimensions as being "eighty-three feet front on President street, and running back one hundred and sixty feet." Thereafter, when pavements were laid on President street and George street, it was discovered that appellants' lot was one hundred and sexty-four feet in length, and appellee's lot one hundred and fifty-six feet; the sidewalks on President street having extended over the eight-feet formerly inclosed by the old fence. Thereupon the appellee laid claim to four feet at the back end of appellants' lot, and on the nineteenth day of June, 1909, filed suit for the recovery of same.

The appellants contended that they and those under whom they claim title had been in actual, open, notorious, adverse possession of the four feet in question for a period of more than ten years prior to the bringing of this suit, that is to say, since 1895—and that they were entitled to tack their occupation on the occupation of their grantors, so that there was continuous occupation for more than ten years, and that therefore they had acquired title by prescription, and that appellee had no right to maintain her suit. The court below held that there was no privity between the occupancy of the Gunnings and the Crowders, and that the entry of the appellants upon the premises constituted a new trespass, and that, as neither occupation had been continued for as much as ten years, the appellants had not acquired title by adverse possession. It was shown in the evidence that Mrs. Gunning never intended to claim more than one hundred and sixty feet, but that it was the mistake of her husband that one hundred and sixty-four feet was fenced in and improved. It is further shown, however, that all the property within the close was pointed out by Mr. Gunning to Mr. Crowder as being the property conveyed, and that delivery was made of the premises as thus indicated. It was also shown that, after the appellants had entered into possession of the premises conveyed to them by Mrs. Gunning, they were permitted by Robinson to use the west half of the lot as a cow pasture. They used this vacant lot, however, with the express permission of Robinson, and recognized his title to the same; but appellants' claim to the four feet in question is not based upon any privilege granted by Robinson to use same as a pasture, but as being part of the lot conveyed to appellants by Gunning, and as being within the close and pointed out to them as part of the premises conveyed, and which, at the time of the institution of this suit, had been continuously occupied as a homestead by the appellants and the Gunnings, and that

their successive possessions created such a privity of estate as permitted the possession of appellants and their grantor to be held as one continuous possession, since there had been no break in possession and occupancy for more than ten years.

*Watkins & Watkins,* for appellants.

The proper determination of this case involves two legal propositions, and we shall present them in the proper order.

First: Was the occupation of Mr. and Mrs. Gunning adverse?

Second: Can the possession of Mr. and Mrs. Gunning be tacked to that of Mr. and Mrs. Crowder so as to constitute one continuous holding of ten years? In other words, was there privity of holding between Mr. and Mrs. Gunning and the appellants, or was the entry of the appellants a fresh trespass? Citing *Metcalf* v. *McCutchen,* 60 Miss. 145; *Branch* v. *Pierce,* 21 Am. Dec. 680; *Bradley* v. *Burkhardt,* 130 Am. St. Rep. 328; *Krause* v. *Nolte,* 3 Am. & Eng. Ann. Cas., p. 1061; 1 Cyc., p. 1038; *Neal* v. *Lee,* 19 D. C. 5; 1 Am. & Eng. Ency. Law (2 Ed.), p. 844; *Davis* v. *Adams,* 129 S. W. 150; *Bardin* v. *Insurance Co.,* 64 S. E. 164; *Steel Co.* v. *Paczocha,* 119 N. W. 550; *Olding* v. *Fisk,* 95 N. W. 492; *Wishart* v. *McKnight,* 179 Mass. 365; *Murray* v. *Romine,* 82 N. W. 318; *Fallon* v. *Simshauser,* 130 Ill. 649; *Wilson* v. *Rogers,* 134 S. E. 318; *McNeely* v. *Langan,* 22 Oh. St. 32; *Kendrick* v. *Latham,* 25 Fla. 819; *Clithero* v. *Fenner,* 106 Am. St. Rep. 978; *Steel Company* v. *Budzier,* 48 L. R. A. 830; *Rembert* v. *Edmondson* (Tenn.), 62 Am. St. Rep. 819; *Wishart* v. *McKingity,* 86 Am. St. Rep. 486; *Holt* v. *Adams,* 25 So. Rep. 716; *Davack* v. *Nealon,* 32 Atl. 675; *Bateman* v. *Jackson,* 45 S. W. 224; *Noher* v. *Farmer,* 111 Pac. 768; 1 Cyc., pp. 1002, 1003.

*Williamson & Wells,* for appellee.

The only claim which appellants can set up to the strip of land in question is title by prescription, or adverse possession. There is no pretense that the strip of land is included within the calls of the deed from Mrs. Gunning to Mr. Crowder, and no pretense that the lot which was sold by Mrs. Gunning and was bought by Crowder, contained more than eighty-three by one hundred sixty feet (83 x 160 ft.), Mrs. Gunning never at any time claimed to own more than eighty-three by one hundred sixty feet (83 x 160 ft.) of the land and never undertook to convey to Mr. Crowder any more than a lot of those dimensions.

Crowder has not owned or occupied any portion of his property for the statutory period of ten (10) years, and in order to establish any title by adverse possession, he must do so by and through the possession of Mrs. Gunning. The term adverse possession designates a possession in opposition to the true title and real owner, and it implies that the possession commenced in wrong by ouster or disseizin, and is maintained against right.

The law on the contrary presumes that every possession is rightful and consistent with and not in opposition to or adverse to the title and ownership. Citing *Alexander* v. *Polk,* 39 Miss. 737; *Dixon* v. *Cook,* 47 Miss. 226; *Metcalf* v. *McCutchen,* 60 Miss. 154; *Jasperson* v. *Scornekow,* 15 L. R. A. (N. S.) 1205.

There being no privity of estate between the two, such as exists between ancestor and heir, or devisor and devisee, and none created by contract, parol or written, having for its object the transfer of the possessory right to the four feet of land, the possession of Mrs. Gunning and Crowder cannot be tacked so as to make out the period of limitations. 1 Cyc. 1007, subsec. "E;" *Erck* v. *Church,* 4 L. R. A. 641; *Marr* v. *Gilliam* (Tenn.), 1 Cald. 491; *Greaves* v. *Devies,* 31 N. W. 914; *Fanning* v. *Wilcox,* 3 Day (Conn.) 258; *Weber* v. *Anderson,* 73 Ill. 430; *Jen-*

*nings et al.* v. *White,* 51 S. E. 799; *Sawyer* v. *Kendall,* 64 Mass. 241; *Hollingsworth* v. *Sherman,* 81 Va. 668.

SMITH, J.. delivered the opinion of the court.

In order that appellants' title to the land in controversy may have become perfect by adverse possession, it is necessary for it to have been held adversely by their grantor, Mrs. Gunning, and that their (appellants') possession should be tacked to that of Mrs. Gunning. It is manifest from the evidence that Mrs. Gunning, while in possession of this land, intended to, and did, claim it as her own under an honest, but mistaken, belief that it was within the calls of her deed. Her possession was, therefore, adverse. *Metcalf* v. *McCutchen,* 60 Miss. 145. That she would have surrendered possession, had she known that the land was not within the calls of her deed, is immaterial; for the character of her possession is determined, not by what she would have done, had this fact been known to her, but by what she actually did while in possession.

In order that one adverse possession may be tacked to another, there must exist privity of possession between the holders thereof. "As a general rule, it may be stated that the requisite privity may be created by any conveyence, agreement, or understanding, that has for its object the transfer of possession and is accompanied by a transfer in fact." 2 Cyc. 451.

This land is not included within the calls of the deed by which the lot owned by Mrs. Gunning was conveyed to appellants; but it is manifest from the evidence that all parties to this deed intended that it should be, and thought that it was, so included, and that possession thereof was by Mrs. Gunning turned over to appellants as a part of the land conveyed. It follows, therefore, that appellants' possession can be tacked to that of Mrs. Gunning. This is in accord with the great weight of authority, as will be seen by an examination of the cases cited in the briefs of counsel.

Under the evidence, the character of appellants' possession of the land in controversy was not for the time being changed by reason of the fact that they obtained permission from the then owners of the lot now owned by appellee to, and did for a short time, use it for a cow pasture.

The decree of the court below is reversed, and a decree here according to the prayer of appellants' cross bill.

*Reversed.*