956 So.2d 977 (2007)
B. Sykes STURDIVANT, David Jackson and Kelly Greenwood, Appellants,
v.
Brenda D. TODD, Terry O. Todd, James Newton and Chessie Denley, Appellees.
No. 2005-CA-01937-COA.
Court of Appeals of Mississippi.
February 6, 2007.
Rehearing Denied May 29, 2007.
*979 James Walker Sturdivant, Greenville, attorney for appellants.
Alison Oliver Kelly, attorney for appellees.
Before MYERS, P.J., CHANDLER and ISHEE, JJ.
*980 CHANDLER, J., for the Court.
¶ 1. Brenda D. Todd, Terry O. Todd (the Todds), James Newton, and Chessie Denley filed a complaint to establish three claims of title by adverse possession against B. Sykes Sturdivant, David Jackson, and Kelly Greenwood (collectively, Sturdivant). The complaint asserted that the Todds, Newton, and Denley each had acquired fee simple title to separate portions of land situated in Tallahatchie County through adverse possession. After a hearing, the Chancery Court of Tallahatchie County found that the plaintiffs had proven the elements of adverse possession. Sturdivant has appealed, arguing (1) that eleven of the chancellor's fact-findings were unsupported by substantial evidence; (2) that the chancellor's decision was manifestly erroneous because the plaintiffs had failed to prove the elements of adverse possession by clear and convincing evidence; and (3) that, if this Court affirms the adverse possession finding, Sturdivant is entitled to a prescriptive easement across the adversely possessed land.
¶ 2. We find that the chancellor's decision was supported by substantial evidence and was not manifestly erroneous. Therefore, we affirm.

FACTS
¶ 3. This case concerns several parcels of land located along Mississippi Highway 35 approximately three miles south of Charleston, Mississippi. In that area, Highway 35 runs roughly north-south. By warranty deed dated August 17, 2004, Sturdivant, Jackson, and Greenwood purchased from Ray Carroll and Larry Joe Lindley an approximately 267 acre parcel of land including the east half of Section 10, Township 24 North, Range 2 East in Tallahatchie County, less and except certain properties listed in the deed. Greenwood testified that the properties excepted from the purchase fronted the east side of Highway 35. The excepted properties included three parcels situated in a row on Highway 35; the northernmost of these parcels was a 1.2 acre parcel owned by Brenda and Terry Todd, south of the Todd parcel was a one-acre parcel owned by Chessie Denley, and south of the Denley parcel was a parcel owned by Jim Newton. The Todds, Denley, and Newton all had their residences on their respective frontage properties. Newton also owned an approximately 5.5 acre parcel of unimproved land that bordered the rear of his frontage property and the rear of Denley's frontage property. Thus, the Todds, Denley, and Newton each owned property fronting the east side of Highway 35, and Sturdivant owned a large area behind the three properties.
¶ 4. Greenwood, a registered professional land surveyor, performed a survey dated January 14, 2005, of a part of the 267 acre parcel. In performing the survey, Greenwood surveyed several properties excepted from the deed in order to obtain the boundaries of his larger parcel. Greenwood surveyed the Todd, Denley, and Newton properties. At some point, Greenwood discovered that, according to the calls of the deeds, there was a gap between the Todd and Denley properties. That gap constituted an approximately three-acre parcel of highway frontage property that was not excepted from Sturdivant's deed and thus was owned by Sturdivant. Greenwood's survey indicates that the three-acre parcel has 108.66 feet of highway frontage between the Todd and Denley properties. The three-acre parcel extends east between the Todd and Denley properties, and, beyond the Denley property, extends further east between the Todd property and Newton's 5.5 acre parcel. Greenwood testified that Sturdivant planned to use the three-acre parcel to build a driveway leading from Highway 35 to a planned cabin to be located on his 267 acre parcel.
*981 ¶ 5. Subsequent to Greenwood's discovery, the Todds, Denley, and Newton filed a complaint alleging that they each had adversely possessed portions of the approximately three-acre parcel. The Todds and Denley testified that, for the duration of their ownership, they believed their properties shared a common north-south boundary line marked by a ditch running along the boundary line. This ditch is located on the three-acre parcel. Terry Todd testified that he believed his property extended north from the ditch to a two inch iron pipe located in the ground. Denley also contended that the northeast corner of her property was a one and one-half inch iron pipe located in the ground. Denley bought her one-acre parcel in 1999 from John Malcolm Brooks. William Clinton Brooks testified that his mother had bought the property in 1970 or 1971, and that his brother, John Malcolm Brooks, had inherited the property from his mother and sold it to Denley. William Clinton Brooks testified that, for the duration of the Brooks family's ownership, they had considered the northern boundary line of their property to be the ditch. Newton testified that he also had believed the Todd property formed a boundary with the Denley property.
¶ 6. Newton testified that he and his wife had bought the 5.5 acre parcel of land behind his house in 1983 from Floyd Brown, a predecessor in title to the 267 acre parcel.[1] In 1983, Brown owned the east half of Section 10, Township 24 North, Range 2 East in Tallahatchie County, less and except the specified highway frontage properties. Brown sold Newton a portion of this property. Newton testified about the purchase. Joe Murphy owned a frontage parcel south of Newton. Newton testified that he told Brown that he wanted to buy land from him "all the way to the Todd line to the north and Murphy to the south." Newton testified that he and Brown walked east from the southeast corner of the Murphy property as far as Newton wanted to go. At that location, he and Brown placed an iron pipe. Then, they walked north toward the Todd property and placed an angle iron at the Todd boundary line. Next, he and Brown took measurements from the existing property lines to the monuments and then instructed a lawyer to draft a deed to Newton with a legal description of the property that specified the boundaries marked by the monuments they had placed. Newton testified that he understood that those monuments marked the boundaries of the property Brown was selling to him. In 1986, Newton's wife, Janice M. Newton, conveyed all of her interest in the property to Newton through a quitclaim deed. Newton testified that, for the duration of his ownership of the 5.5 acre parcel, he believed that the 5.5 acre parcel bounded the Todds on the north. Terry Smith, a registered professional land surveyor, testified that he located the monuments described by Newton, but that the monuments did not match the calls of Newton's deed.
¶ 7. The chancellor viewed the property on the day of the hearing. The chancellor found from his view of the property and from the testimony that the Todds, Denley, and Newton had proven by clear and convincing evidence every element of adverse possession. The chancellor ordered the plaintiffs to obtain a survey and legal description of the adversely possessed property. On October 21, 2005, the court entered a final decree setting out the new legal descriptions of each parcel owned by the respective plaintiffs.
¶ 8. Further facts are adduced below. Since this appeal involves three claims of adverse possession against Sturdivant, when necessary for clarity, we will refer to the property disputed between Sturdivant *982 and the Todds as the Sturdivant-Todd disputed property, to that disputed between Sturdivant and Denley as the Sturdivant-Denley disputed property, and to that disputed between Sturdivant and Newton as the Sturdivant-Newton disputed property.

STANDARD OF REVIEW
¶ 9. This Court adheres to a limited standard of review of the decisions of a chancellor. Nichols v. Funderburk, 883 So.2d 554, 556(¶ 7) (Miss.2004). We will reverse only when the chancellor's determinations were manifestly wrong or clearly erroneous, or when the chancellor applied an incorrect legal standard. Id. A finding that the proof was sufficient to sustain a claim of adverse possession is a fact-finding that requires our application of the substantial evidence/manifest error test. Walker v. Murphree, 722 So.2d 1277, 1280(¶ 15) (Miss.1998). If substantial evidence supports the chancellor's fact-findings, this Court must affirm, even though we "might have found otherwise as an original matter." Nichols, 883 So.2d at 556(¶ 7). And, where the chancellor has failed to make specific findings, we will assume that the chancellor resolved such issue in favor of the appellee. Id.

LAW AND ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT JAMES NEWTON AND FLOYD BROWN DISCUSSED AND MARKED THE CORNERS OF THE PROPERTY BOUNDARY LINES WITH ANGLE IRONS PRIOR TO THE EXECUTION AND DELIVERY OF THE WARRANTY DEED, WHICH WARRANTY DEED WAS CLEAR AND UNAMBIGUOUS AND DID NOT CONTAIN OR MENTION ANY OF THE MARKED PROPERTY IN THE LEGAL DESCRIPTION?
¶ 10. This issue is the first of eleven attacks on specific fact-findings by the chancellor. In this argument, Sturdivant contends that the chancellor erred by crediting Newton's testimony that, in 1983, he and Brown discussed and marked the corners of the 5.5 acre parcel. Sturdivant argues that the chancellor could not consider Newton's testimony as evidence of adverse possession because the best proof of Brown and Newton's intent was the 1983 deed from Brown to Newton, the calls of which did not correspond to the monuments laid by Newton and Brown.
¶ 11. This argument is without merit. "[P]ossession is adverse in which the holder claims, and intends to claim title, without regard to the fact that the possession and claim is held and made under an honest, but mistaken, belief that the land is within the calls of his deed." Askew v. Reed, 910 So.2d 1241, 1244(¶ 9) (Miss.Ct.App.2005) (quoting Metcalfe v. McCutchen, 60 Miss. 145, 154 (Miss.1882)). Newton's testimony about what he and Brown understood the boundaries of the 5.5 acre parcel to be was relevant to show that Newton believed he had purchased the disputed property from Brown. Newton was entitled to show that, based upon his purchase negotiations with Brown, Newton held the property under an honest, but mistaken, belief that the land was within the calls of his deed. The chancellor did not err by finding that Newton and Brown discussed and marked the corners of the 5.5 acre parcel.
II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT NEWTON ACQUIRED RECORD TITLE TO THE PROPERTY IN DISPUTE WHEN HE ACCEPTED THE 1983 WARRANTY DEED AND THE 1986 QUITCLAIM DEED?
¶ 12. Next, Sturdivant challenges the chancellor's finding that "Newton and his *983 wife purchased the property in question in 1983 and in 1986 his wife signed a quitclaim deed giving him full ownership of the property." Sturdivant contends that the chancellor's use of the words "the property in question" meant that this statement by the chancellor equated with a finding that Newton and his wife had acquired record title to the Sturdivant-Newton disputed property. Sturdivant claims the finding that Newton had record title to this disputed property was manifestly erroneous.
¶ 13. This issue is without merit. The chancellor never expressly found that Newton had acquired record title to the Sturdivant-Newton disputed property, but rather found that Newton had acquired title to that property by adverse possession. It is manifest from the chancellor's opinion that "the property in question" that the chancellor was referring to was Newton's 5.5 acre parcel to which he had record title, not to the Sturdivant-Newton disputed property. Otherwise, the finding that Newton had adversely possessed that property would have been a nonsensical result. Indeed, instead of the semantic confusion urged by Sturdivant, the chancellor's opinion clearly communicates the factual and legal underpinnings for its holding that the Todds, Denley, and Newton proved their claims of adverse possession.
III. WHETHER THE TRIAL COURT ERRED IN FINDING THAT NEWTON CLEARED THE UNDERBRUSH AND PLANTED AZALEA BUSHES ON THE PROPERTY IN DISPUTE?
¶ 14. In his discussion of Newton's possessory acts, the chancellor found that Newton had cleared the underbrush in the woods and had planted azalea bushes. Sturdivant argues that this was an implicit finding that Newton had cleared underbrush and planted azalea bushes on the Sturdivant-Newton disputed property, and not only on the property to which Newton had record title. Sturdivant argues that the implicit finding was manifest error because Newton never specified that his clearing underbrush and planting azaleas was on the Sturdivant-Newton disputed property.
¶ 15. The transcript shows that Newton testified that he had cleared underbrush and planted azaleas on the property. That was exactly what the chancellor found. We review the evidence supporting Newton's adverse possession claim below, including the chancellor's findings on Newton's use of the Sturdivant-Newton disputed property.
IV. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE NEWTON PROPERTY IN DISPUTE IS VISIBLE FROM HIGHWAY 35?
¶ 16. In his finding that the plaintiffs' possession of the disputed property was open, notorious, and visible, the chancellor stated that "Newton offered uncontroverted evidence that the possession of the land was done in an open manner, as the land was visible from Highway 35." Sturdivant argues that this finding was manifestly erroneous because it was contradicted by the chancellor's later statement that "[t]he Respondents only offered evidence that no one could visibly see the [Sturdivant-Newton disputed] property from the highway." Contrary to Sturdivant's argument, the chancellor's statements did not conflict; in the second statement, the chancellor was acknowledging Sturdivant's evidence, not finding that the Sturdivant-Newton disputed property could not be seen from Highway 35.
¶ 17. Sturdivant also argues that the finding that the Sturdivant-Newton disputed property was visible from Highway 35 was manifestly erroneous because there was no evidence to that effect. The chancellor's finding was not manifestly erroneous. *984 The Sturdivant-Newton disputed property was located to the east and north of Newton's 5.5 acre parcel. While Newton testified that people on Highway 35 could not see "all the way to the back" of the property, Newton testified that a substantial part of the rear, or eastern, portion of his property could be seen from Highway 35. The chancellor's opinion was also informed by his view of the property. This issue is without merit.
V. WHETHER THE TRIAL COURT ERRED IN FINDING THAT WITH REGARD TO THE NEWTON PROPERTY IN DISPUTE NEWTON HAD EXCLUSIVE OWNERSHIP, IS THE ONLY ONE WHO POSSESSED IT, AND THAT NO ONE EVER TRIED TO EVICT HIM?
¶ 18. In his finding that Newton had met the elements of adverse possession regarding the Sturdivant-Newton disputed property, the chancellor found that "Newton testified that since 1986, he has had exclusive ownership of the property. Newton stated that he is the only one who possessed the property. Newton also stated that no one has ever tried to evict him from the property or claim the property to be theirs until this dispute arose." Sturdivant argues that "the property" referred to by the chancellor was not the Sturdivant-Newton disputed property, but was Newton's 5.5 acre parcel to which he had record title.
¶ 19. This argument is without merit. In this case, the testimony indicated that each plaintiff had believed, until put on notice by Sturdivant, that the calls of his or her deed included part of the disputed property. When a plaintiff referenced his property at the trial, it was clear the plaintiff was talking about the entire parcel of land he had considered his property from the date of purchase, including that portion now disputed with Sturdivant. The chancellor's finding that Newton testified about his exclusive possession of the Sturdivant-Newton disputed property was supported by substantial evidence.
VI. WHETHER THE TRIAL COURT ERRED IN FINDING THAT DENLEY AND BROOKS MAINTAINED AND POSSESSED THE PROPERTY IN DISPUTE FOR A CONTINUOUS AND UNINTERRUPTED PERIOD OF TEN YEARS?
¶ 20. The chancellor found that Denley and her predecessors in title, the Brooks family, had maintained and possessed the Sturdivant-Denley disputed property for a continuous and uninterrupted period of ten years. Sturdivant challenges this fact-finding by contending that there was insubstantial evidence that Denley and Brooks had kept the Sturdivant-Denley disputed property mowed for a continuous and uninterrupted period of ten years. We observe that there was evidence other than lawn mowing establishing Denley's possession and maintenance of the disputed property, which we will address in our review of the sufficiency of the evidence of adverse possession below. We believe the challenged finding of the chancellor is more appropriately addressed by that discussion.
VII. WHETHER THE COURT ERRED IN FINDING THAT THE DENLEY DRIVEWAY ON THE PROPERTY IN DISPUTE HAD BEEN USED ON A DAILY BASIS?
¶ 21. Denley had a circular driveway in front of her house. The northern end of the circular driveway was on the Sturdivant-Denley disputed property. The chancellor found that Terry Todd and William Brooks had testified that the circular driveway "is used on a daily basis." Sturdivant points out that neither Terry Todd nor William Brooks testified that the driveway was used on a daily basis. Indeed, *985 Terry Todd testified that Denley's circular driveway had been there for the twenty-three years he had lived next door to her property, and William Brooks testified that the circular driveway had always been the driveway leading to the house. No party testified that the driveway had been used on a daily basis. However, it was undisputed that the circular driveway was the sole means of ingress and egress to Denley's house, a house that had functioned as an occupied residence for at least twenty-three years. Therefore, while the chancellor clearly erred in finding that Terry Todd and William Brooks testified that the driveway was used on a daily basis, there was substantial evidence before the chancellor that the driveway was used with a frequency approximating daily use. The error was harmless and immaterial to the chancellor's holding.
VIII. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE DENLEY CHILDREN PLAYED IN THE DITCH ON THE PROPERTY IN DISPUTE?
¶ 22. In considering the adverse possession claims of the Todds and Denley, the chancellor found that "both parties' children played in the ditch when they were youths." This finding was supported by the testimony of the Todds, who stated that both the Todd children and the Brooks children had played in and around the ditch dividing the Sturdivant-Todd disputed property from the Sturdivant-Denley disputed property. Sturdivant argues that the chancellor's finding was manifestly erroneous because the chancellor said that "both parties' children" had played on the property, and Brooks was not a party to the lawsuit.
¶ 23. This issue is without merit. A period of adverse possession may be tacked to that of a predecessor in title if there is privity of contract. Crowder v. Neal, 100 Miss. 730, 736, 57 So. 1, 3 (1911). Therefore, the activities of the Brooks family, Denley's predecessors in title, on the Sturdivant-Denley disputed property were relevant to Denley's adverse possession claim. In the chancellor's statement that both parties' children had played on the disputed property, the chancellor obviously intended to refer to the Todd and Brooks children. The chancellor's error in stating that both parties' children played in the ditch was harmless because the chancellor was obviously referring to the Todd and Brooks children.
IX. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE TODDS AND DENLEY ORALLY DECRIED CLAIM OF OWNERSHIP OF THE PROPERTY IN DISPUTE TO FRIENDS, RELATIVES, AND NEIGHBORS?
¶ 24. The chancellor found that the Todds and Denley had offered proof of their claims of ownership of the disputed properties through uncontroverted testimony that each party had "orally decried claim of ownership to friends, relatives, and neighbors." Sturdivant argues that there was insubstantial evidence in the record to support this finding. In fact, Terry Todd testified that, during his twenty-three year ownership of his property, he had told others that his property went to the ditch. Brenda Todd testified that, during that time, she imagined she had told others that her property went to the ditch. It was within the chancellor's discretion to determine the weight and credibility of the Todds' testimony.
¶ 25. However, while Denley testified that she believed for the duration of her ownership that her property went to the ditch, she never testified that she told anyone that her property went to the *986 ditch. Therefore, the chancellor's finding that Denley had orally decried her claim of ownership to others was manifestly erroneous. But even without this finding, as discussed below, the chancellor's holding that Denley had proven the elements of adverse possession by clear and convincing evidence was supported by substantial evidence.
¶ 26. Sturdivant also argues that the testimony supporting the plaintiffs' oral declarations of ownership did not constitute clear and convincing evidence supporting the adverse possession element of claim of ownership. However, the chancellor's order identifies other evidence supporting the element of claim of ownership; the chancellor's holding that the plaintiffs had met their burden of proof of that element did not rest solely upon the plaintiffs' oral declarations of ownership. We address the evidence pertaining to the plaintiffs' claims of ownership of the disputed properties below.
X. WHETHER THE TRIAL COURT ERRED IN FINDING THAT DENLEY TESTIFIED THAT WITH REGARD TO THE PROPERTY IN DISPUTE NO ONE HAS EVER TRIED TO EVICT HER, CLAIMED OWNERSHIP, OR TRIED TO USE THE PROPERTY?
¶ 27. The chancellor found that Denley testified that, with respect to the north side of her property, no one had ever tried to evict her, claimed ownership, or tried to use the property. Sturdivant argues that the chancellor's finding that Denley denied any disputes over her northern boundary line was manifestly erroneous. This issue is without merit. In Denley's testimony, she indicated that the north boundary of her property was the ditch lying between her property and the Todds. Denley testified to having had a dispute with Newton over her property's south boundary line, but testified that she had no dispute with anyone about her northern property line, which she believed to be the ditch.
XI. WHETHER THE TRIAL COURT ERRED IN FINDING THAT DENLEY'S POSSESSION OF THE PROPERTY IN DISPUTE HAD BEEN PEACEFUL?
¶ 28. The chancellor found that Denley testified that her use of the Sturdivant-Denley disputed property had been peaceful. Sturdivant argues that this finding was manifestly erroneous because Denley testified to her peaceful use of her house, not her peaceful use of the disputed property. In support of this argument, Sturdivant quotes the following portion of Denley's testimony on direct examination:
Q. Have you come and gone openly so that everybody knows that's your house?
A. That's right. I do.
Q. Okay. And would you say that your living there over the past six years has been peaceful?
A. Peaceful.
¶ 29. The above questions were part of a line of questioning by Denley's counsel that began with counsel clarifying that Denley had always believed that the northern boundary of her property was the ditch. Counsel then asked Denley a series of questions about her use of "the property." It was plain from the testimony that it was the understanding of both counsel and Denley that these questions referred to Denley's use of the entire parcel of property which Denley had believed she owned, including the Sturdivant-Denley disputed property. The application of common sense to Denley's testimony indicates that the above-quoted testimony referred to the entire parcel which Denley believed she owned, including the Sturdivant-Denley disputed property. The chancellor's finding was supported by substantial evidence.
*987 XII. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE PLAINTIFFS MET THE BURDEN OF PROOF REQUIRED TO ESTABLISH A CLAIM OF ADVERSE POSSESSION, AND WHETHER THE PLAINTIFFS ENGAGED IN SUFFICIENT ACTS OF POSSESSION TO "FLY THE FLAG" AND PUT THE DEFENDANTS ON NOTICE THAT THEY ADVERSELY CLAIMED THE PROPERTY IN DISPUTE?
¶ 30. A landowner in Mississippi may be involuntarily divested of his legal title to land through adverse possession. Miss.Code Ann. § 15-1-13 (Rev.2003). Sturdivant argues that the chancellor's finding that the Todds, Denley, and Newton had established their adverse possession claims was unsupported by substantial evidence and was manifestly erroneous. A party claiming adverse possession must show six elements by clear and convincing evidence. Blackburn v. Wong, 904 So.2d 134, 136(¶ 15) (Miss.2004). "[F]or possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." Id. A period of adverse possession may be tacked to that of a predecessor in title if there is privity of contract. Crowder, 100 Miss. at 736, 57 So. at 3. As some of the facts pertain to all three adverse possession claims, we address all three claims together.
(1) Under claim of ownership
¶ 31. Terry and Brenda Todd testified that, from the time they purchased their highway frontage property twenty-three years prior to the hearing, they believed the southern boundary of their property was the ditch. Further, the Todds communicated to others that their property was bounded by the ditch. Denley also testified that, for the six years she had owned the property, she believed that the northern boundary of her property was the ditch. Brooks, Denley's predecessor in title, testified that, since 1970 or 1971, he believed the northern boundary was the ditch. Newton testified that, since purchasing the 5.5 acres from Brown in 1983, he believed that he owned all of the property between the monuments set by him and Brown. There was substantial evidence that all three plaintiffs held the land under claim of ownership.
(2) Actual or hostile
¶ 32. Actual possession has been defined as "effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses." Blankinship v. Payton, 605 So.2d 817, 819-20 (Miss.1992). Possession includes the intent to exclude others except with the occupant's consent. Id. at 820. Possession is hostile and adverse when the adverse possessor intends to claim title notwithstanding that the claim is made under a mistaken belief that the land is within the calls of the possessor's deed. Alexander v. Hyland, 214 Miss. 348, 357, 58 So.2d 826, 829 (1952). "[T]he fact that claimant took possession under a deed is [] admissible to show the hostile character of his occupancy." Rawls v. Parker, 602 So.2d 1164, 1169 (Miss.1992).
¶ 33. The chancellor found that the Todds had proven that they actually possessed the Sturdivant-Todd disputed property. This finding was supported by substantial evidence. The chancellor observed that, while there was some dispute over whether the Todds and Denley maintained their land up to the ditch, the Todds testified that they had cleared the ditch on numerous occasions to rid it of snakes and other pests so that their children *988 could play in the ditch. Further, Terry Todd testified that there was a line of trees between the ditch and his lawn, and that he had kept his lawn mowed up to the tree line continuously for twenty-three years. Terry Todd also testified that, on an occasional basis, he cleared out underbrush from under the trees along the ditch and that his children played in the ditch. Terry Todd also testified that there were pathways across the disputed property leading to the Denley residence. Terry and Brenda Todd both testified that, over the years, they spent time in their front yard, which included part of the Sturdivant-Todd disputed property.
¶ 34. There was substantial evidence that the Todds' possession was hostile because they testified that they believed that the Sturdivant-Todd disputed property was within the calls of their deed. Terry Todd testified that, when he bought the property, he walked the property with the seller, who indicated that the property's southern boundary was the ditch. The seller also pointed out an iron pipe marking the southeast boundary of the Todd property at the ditch. At the hearing, the chancellor indicated that he had seen that iron pipe. And, the chancellor stated that, during his view of the property, he observed the use of the property and actual possession was obvious. Finally, the Todds paid taxes on the Sturdivant-Todd disputed property.
¶ 35. The chancellor found that Denley had actually possessed the Sturdivant-Denley disputed property. Denley testified that she thought that the southern boundary of her property was the ditch that divided her property from the Todd property. John B. Denley,[2] who had read the water meter at the Denley house ever since she moved in, testified that Denley kept her yard mowed to the ditch. Terry Todd testified that Brooks had kept the yard mowed up to the ditch. William Brooks testified that his family had cut the grass up to the ditch and had placed pens on the disputed property. A substantial portion of Denley's circular driveway is located on the disputed property. The chancellor found that the driveway is used on a daily basis. There was substantial evidence that Denley actually and hostilely possessed the Sturdivant-Denley disputed property.
¶ 36. The chancellor found that Newton had actually possessed the Sturdivant-Newton disputed property, located to the north and east of the 5.5 acre parcel to which Newton had record title. Newton testified that he believed that the Sturdivant-Newton disputed property was embraced by the calls of his deed. He testified that he and Brown had set monuments demarcating the amount of property Newton was buying from Brown in 1983. Newton testified that he decided to keep the land wild and unimproved, but that he occasionally cleared underbrush on the parcel and had planted azaleas on the parcel. While Newton did not specify whether those activities occurred on the Sturdivant-Newton disputed property, it was apparent from Newton's testimony that he was referring to the entire parcel that he believed he had purchased from Brown. The chancellor stated that he viewed the monuments on the ground and Newton's use of the property, and that actual possession was obvious to the court. Moreover, the chancellor noted that the applicable Tallahatchie County tax map supported Newton's claim because the map showed that Newton's property bounded the Todd property on the north side. The chancellor's finding that Newton actually and hostilely possessed the *989 Sturdivant-Newton disputed property was supported by substantial evidence.
(3) Open, notorious, and visible
¶ 37. Mere possession does not satisfy the requirement that possession be open, notorious, and visible. Craft v. Thompson, 405 So.2d 128, 130 (Miss.1981). Beyond mere possession, an adverse possessor "must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest." Blankinship, 605 So.2d at 820. "[T]he occupancy, under claim of ownership, must be actual, open, notorious, and visible." People's Realty & Dev. Corp. v. Sullivan, 336 So.2d 1304, 1304 (Miss.1976) (quoting Berry v. Houston, 195 So.2d 515, 518 (Miss.1967)). Sporadic and temporary activity on the property is insufficient to provide notice of an adverse claim. Id. It is also the rule that:
[B]oth the quality and quantity of possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land. Adverse possession of "wild" or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands. The question in the end is whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder upon notice that the lands are held under an adverse claim of ownership.
Lynn v. Soterra, 802 So.2d 162, 167(¶ 17) (Miss.Ct.App.2001) (quoting Rawls v. Parker, 602 So.2d 1164, 1168 (Miss.1992)).
¶ 38. Sturdivant contends that the possessory acts of the Todds, Denley, and Newton on their respective portions of the disputed property were insufficient to put the record title holder on notice of an adverse claim. Sturdivant cites several cases in support of his proposition that acts of possession such as lawn mowing, parking cars, cultivating a garden, and placing items of personal property on the land of another are insufficiently open, notorious, and visible to establish a party's adverse possession claim. We briefly discuss those cases.
¶ 39. In Walker, this Court affirmed the chancellor's rejection of Walker's claim that he had adversely possessed a part of an adjoining parcel. Walker, 722 So.2d at 1282(¶ 20). The claimant's possessory acts were that (1) he personally stored junk cars on the property, (2) he occasionally parked two eighteen wheelers on the property, (3) he mowed the property, and (4) one of his tenants worked a garden on the property. Id. at (¶ 18). When Walker placed houses on the property, Murphree, the record title holder, filed a petition for injunctive relief. Id. at 1278(¶ 2). This Court found that the pertinent question in assessing the open, notorious, and visible element is whether the claimant's possessory acts were enough to put the true owner on notice of an adverse claim. Id. at 1281(¶ 17) (quoting Rawls, 602 So.2d at 1168). Mindful of our standard of review, we found that the chancellor was within his discretion in finding that Walker's possessory acts were insufficient to provide Murphree with notice. Id. at 1282(¶ 20). The Court observed that Murphree had filed a claim for relief after Walker put houses up on the property, which indicated that Walker's acts prior to erecting the houses had been insufficient to place Murphree on notice of an adverse claim. Id. at (¶ 18). The Court also noted that Walker never filed a counter-claim to establish his title through adverse possession, but instead used adverse possession as a defense to *990 Murphree's petition for injunctive relief. Id. at (¶ 19).
¶ 40. In Rawls, the true owner, Rawls, filed a complaint seeking injunctive relief and confirmation of title, asserting that her neighbor, Parker, had encroached on her property by erecting a fence enclosing part of her property. Rawls, 602 So.2d at 1165. In defense, Parker claimed to have adversely possessed the property owned by Rawls. Id. Parker testified that, for over ten years, he had placed items of personal property and cultivated a garden on the disputed property. Id. at 1168. The chancellor found that Parker had proven adverse possession because these acts were open, notorious, and visible to Rawls. Id. The supreme court reversed. Id. at 1169. The court found that Parker's placement of personal property on the disputed land had been reasonably interpreted by Rawls as dumping, not as chattel storage evincing an adverse claim. Id. at 1168. The court also found that Parker had not shown that he had possessed the property to the exclusion of Rawls. Id. at 1169. Further, Rawls acted to protect her property after Parker erected a fence, indicating that Rawls was not put on notice by Parker's prior acts that Parker was claiming the property adversely. Id.
¶ 41. In Simcox v. Hunt, 874 So.2d 1010, 1015(¶ 20) (Miss.Ct.App.2004), Simcox planted grass, mowed the grass, spread dirt, and spread gravel on the disputed property. The chancellor rejected Simcox's adverse possession claim. Id. at 1016(¶ 22). Sturdivant argues that Simcox stands for the proposition that acts similar to Simcox's are insufficiently open, notorious, and visible to support a finding of adverse possession. However, in Simcox, this Court affirmed the chancellor's rejection of the adverse possession claim because Simcox had used the disputed property with the permission of the true owner. Id. at 1015(¶ 21). In People's Realty & Dev. Corp., the court found that a single timber harvest, the occasional pasturing of cattle, and nailing wire strands to trees to create a fence that could not be seen except by going across a reed brake were insufficient to establish adverse possession in light of the additional fact that the claimant had attempted to purchase the property from the true owner on two prior occasions. People's Realty & Dev. Corp., 336 So.2d at 1304.
¶ 42. Thus, in both Simcox and People's Realty & Dev. Corp., the court rejected the claim of adverse possession in part due to evidence negating the would-be adverse possessor's allegation of exclusive possession of the property. In this case, all of the evidence showed that each claimant's possession of the property was exclusive and under claim of ownership. In Walker and Rawls, the fact that the true owners took action after the erection of a fence and houses on the disputed properties indicated that the adverse possession claimant's prior acts were insufficient to have placed the true owner on notice. As discussed below, in the instant case, the totality of the evidence before the chancellor substantially supported a finding that the possession of the disputed properties by the Todds, Denley, and Newton was open, notorious, and visible.
¶ 43. The chancellor first addressed the sufficiency of the possessory acts of the Todds and Denley. The chancellor found that the Todds and Denley had always openly and visibly used the disputed property as if it were their own. The chancellor found their possession was open because their use of the land in question was visible from Highway 35. John B. Denley, the water association employee, testified that he had read the Todds' water meter for over twenty years, and had read the Denley water meter as well. He stated *991 that there was no water meter between the Todds and Denley, and that he never had any reason to believe that there was a property owner between the Todds and Denley. He stated that both the Todds and Denley, and her predecessor, the Brooks family, kept the property mowed to the ditch. And, the Todds, Denley and Brooks indicated that they had always believed they owned neighboring properties divided by the ditch. The chancellor also found that Denley's circular driveway had been in use for the statutory period for adverse possession. Further, the tax map showed that the Todd property adjoined the Denley property. The Todds paid taxes on the Sturdivant-Todd disputed property. "[P]ayment of taxes is one factor as to possession." Buford v. Logue, 832 So.2d 594, 602(¶ 22) (Miss.Ct.App.2002). Denley's property was exempt from taxation as a homestead, but the tax map showed that her property adjoined the Todd property.
¶ 44. The chancellor found from his view of the land at issue that "the possession of the property . . . was blatantly clear that it was open, notorious, and visible." This opinion was supported by the aerial map of the land at issue that was admitted into evidence. On that map, it appears that the Todd and Denley properties lie next to each other and were landscaped up to a tree line that, according to Todd's testimony, was at the ditch.
¶ 45. The chancellor found Newton's claim to be more problematic because Newton had kept the property he believed he had purchased from Brown in a wild state in order to preserve a buffer between his house and the 267 acre parcel, which he feared would be logged. The chancellor recognized the rule that adverse possession of wild or unimproved lands can be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands. Rawls, 602 So.2d at 1168. The chancellor found that Newton's possession of the Sturdivant-Newton disputed property was open, notorious, and visible. The chancellor stated that, during his visit to the property, he had viewed the monuments in the ground that indicated the intended boundaries of the property. The chancellor stated that the property he viewed was cleared out under the trees. The chancellor further noted that the tax map indicated that the disputed property was owned by Newton.
¶ 46. We have identified another aspect of the evidence that supports the chancellor's finding of Newton's open, notorious, and visible use. "Acquiescence in a wrong boundary line will not establish it as the true line, but such acquiescence for a long period of time is evidence that such line is the true line." Hulbert v. Fayard, 230 Miss. 1, 10, 92 So.2d 247, 251 (1957). The court has also stated in the adverse possession context that, "recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line." York v. Haire, 236 Miss. 711, 716, 112 So.2d 245, 247 (1959). The record shows that Brown, Sturdivant's predecessor in title, owned the 267 acre parcel until 2003, when it was foreclosed upon. The chancellor accepted the testimony of Newton that, before he purchased the 5.5 acre parcel from Brown, he and Brown walked the land and placed monuments at the intended boundaries of the parcel. Newton testified that he and Brown had intended the monuments to reflect the true boundaries of the parcel. There was no evidence of any dispute between Newton and Brown as to the boundary lines of Newton's 5.5 acre parcel. Therefore, the evidence accepted by the chancellor showed that Brown, the prior *992 true owner of the Sturdivant-Newton disputed property, had acquiesced in the boundaries marked by the monuments from 1983 until he relinquished ownership of the property in 2003.
¶ 47. In addition to the above evidence of the three claimants' open, notorious, and visible possession of the disputed properties, the chancellor also based his holding upon Greenwood's testimony that, before he purchased the 267 acres, he told the seller that the disputed property might be adversely possessed and that the seller might not even own the property due to the adverse possession. "A possession which is adverse and actually, known to the true owner is equivalent to a possession which is open and notorious and adverse." McCaughn v. Young, 85 Miss. 277, 294, 37 So. 839, 842 (1905) (quoting Holtzman v. Douglas, 168 U.S. 278, 284, 18 S.Ct. 65, 42 L.Ed. 466 (1897)). Here, Greenwood had admittedly received notice from three claimants' uses of the disputed properties that the disputed properties might have been adversely possessed. All of the evidence before the chancellor indicated that everyone involved in this case believed the disputed properties to have been within the calls of the claimants' deeds until sometime prior to Sturdivant's purchase of the 267 acre parcel. By that time, the three claimants' exclusive dominion and control over the disputed properties had been continuous and uninterrupted for over the ten year period required for adverse possession. The chancellor's finding of open, notorious, and visible possession by the Todds, Denley, and Newton was supported by substantial evidence and was not clearly erroneous.
(4) Continuous and uninterrupted for a period of ten years
¶ 48. The chancellor found that the parties' use of their respective portions of the disputed property had been continuous and uninterrupted for a period of ten years. The Todds testified that they had occupied the Sturdivant-Todd disputed property for twenty-three years. Denley testified that she had purchased her property in 1999, from which time she possessed the Sturdivant-Denley disputed property. Prior to Denley's purchase of her property, the Brooks family possessed the Sturdivant-Denley disputed property, and William Brooks testified that his family had possessed and used the disputed property from 1970 or 1971 until the 1999 sale to Denley. Newton testified that he had possessed the Sturdivant-Newton disputed property since 1983. There was substantial evidence that each party's possession of his or her respective portions of the disputed property was continuous and uninterrupted for a period exceeding ten years.
(5) Exclusive
¶ 49. The chancellor found that the parties' use of their respective portions of the disputed property was exclusive. Exclusive possession evinces "an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising dominion of a sole owner." Rawls v. Parker, 602 So.2d 1164, 1169 (Miss.1992). The evidence substantially showed that the Todds, Denley, and Newton held their respective portions of the disputed property believing said portions to be included within the calls of their deeds and that each exercised the dominion of a sole owner.
(6) Peaceful
¶ 50. Evidence was presented by the Todds, Denley, and Newton that their possession of their respective portions of the disputed property was peaceful. Indeed, *993 there was no evidence that anyone had ever contested or disputed the three plaintiffs' possession of the disputed property until the Sturdivant purchase.
XIII. IN THE EVENT THAT THE CHANCELLOR'S RULING IS UPHELD AND DEFENDANTS ARE DENIED CONVENIENT ACCESS TO THE NORTHERN PART OF THEIR PROPERTY, SHOULD DEFENDANTS BE GRANTED A PRESCRIPTIVE EASEMENT ACROSS THE PROPERTY ADVERSELY TAKEN?
¶ 51. Sturdivant argues that, if this Court affirms the chancellor's finding that the Todds, Denley, and Newton have title to the disputed property by adverse possession, Sturdivant is entitled to an prescriptive easement over the property. The Todds, Denley, and Newton contend that this argument is procedurally barred because Sturdivant never requested an easement in the lower court. Indeed, the chancellor's opinion did not address this issue.
¶ 52. It appears that the issue was placed before the chancellor by Sturdivant's proposed findings of fact and conclusions of law, in which Sturdivant argued that an easement was reasonably necessary for the enjoyment of his land. Sturdivant contended that he would suffer disproportionate expense and inconvenience if he lost the disputed property because then he would have to build a road twice as long through rolling hills in order to access the cabin site. Sturdivant testified that building the alternate road would be twice as expensive as a road across the disputed property.
¶ 53. While Sturdivant requests an easement by prescription, his arguments pertain to an easement by necessity. An easement by necessity is an easement that arises by implication whenever part of a commonly owned tract of land is severed such that one portion of the property has been rendered inaccessible except by passing over the other portion, or by trespassing on the lands of another. Leaf River Forest Prods., Inc. v. Rowell, 819 So.2d 1281, 1284(¶ 9) (Miss.Ct.App. 2002). "The burden of proof is on the claimant seeking an easement by necessity; the party must establish that he is implicitly entitled to the right of way across another's land." Id. at (¶ 11).
¶ 54. The essence of Sturdivant's argument is not that he lacks any access to his land, but that the access he has is less convenient than that over the adversely possessed land. Our cases establish that an easement by necessity may be created by proving only reasonable necessity rather than absolute physical necessity. Fourth Davis Island Land Company v. Parker, 469 So.2d 516, 520 (Miss. 1985). An easement by necessity will be granted when the land is not necessarily landlocked but would be "highly convenient or essential to the full enjoyment of the land." Id. Our concern is limited to whether the alternative route would involve disproportionate expense and inconvenience. Id. However, "such a situation would arise when the expense of making the means of access available would exceed the entire value of the property to which access was sought." Mississippi Power Co. v. Fairchild, 791 So.2d 262, 266(¶ 11) (Miss.Ct.App.2001) (quoting Marshall v. Martin, 107 Conn. 32, 139 A. 348, 350 (1927)). An easement by necessity will not be awarded when the only evidence before the court is that the alternative route would be longer and more inconvenient. Swan v. Hill, 855 So.2d 459, 464(¶ 22) (Miss.Ct.App.2003). While Sturdivant submitted a map showing the longer alternative route, Sturdivant submitted no evidence as to the allegedly higher costs of the alternative route such as estimates, *994 bids, or other documentation. The chancellor's implicit rejection of Sturdivant's claim to an easement by necessity was supported by substantial evidence and was not clearly erroneous.
¶ 55. THE JUDGMENT OF THE CHANCERY COURT OF TALLAHATCHIE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. ROBERTS, J., NOT PARTICIPATING.
NOTES
[1] Brown was deceased at the time of the hearing.
[2] There was no evidence that John B. Denley was related to Chessie Denley.