# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01117-COA

## CONSOLIDATED WITH:

## NO. 2014-CA-00400-COA

**SYLVIA DAVIS RESTER AND L.B. DAVIS**                    **APPELLANTS**

**v.**

**GREENLEAF RESOURCES, INC.**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/14/2015 |
| TRIAL JUDGE: | HON. DAWN H. BEAM |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JACK PARSONS |
| ATTORNEY FOR APPELLEE: | MORAN M. POPE III |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | ON REMAND, HELD APPELLANTS FAILED TO ESTABLISH OWNERSHIP BY ADVERSE POSSESSION OF DISPUTED PROPERTY; REMOVED CLOUD FROM APPELLEE'S TITLE |
| DISPOSITION: | AFFIRMED - 08/09/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND GREENLEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     This case is before our Court for the second time.  After a bench trial, the Pearl River County Chancery Court originally ruled that Sylvia Rester and L.B. Davis (Davis) failed to establish ownership by adverse possession of the property in dispute and cleared all clouds of title, declaring Greenleaf Resources Inc. (Greenleaf) the sole owner of the property at

issue. Rester and Davis appealed, and in April 2015, this Court reversed and remanded the chancellor's ruling, finding the chancery court erred in limiting its focus to the period of time after Greenleaf purchased record title to the property from 2004 to 2012.[1] On remand, we directed the chancellor to examine the period of time prior to Greenleaf's purchase in 2004, which would date back to approximately 1919, when the property was initially claimed by the Davis family. After analyzing this time period, the chancellor made the same determination. Rester and Davis again appealed. Finding no abuse of discretion, we affirm the chancellor's judgment.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2. In January 2004, L.O. Crosby III conveyed by warranty deed 297.61 acres of land in Pearl River County, Mississippi, to Greenleaf. The deed was recorded four days after purchase. Greenleaf had this tract, and many other parcels of land, managed by St. Regis Paper Company. The property at issue here is 19.6 acres within the 297.61-acre tract of property. This dispute arose in early 2006, when Edgar Vines, the sole shareholder of Greenleaf, discovered someone cutting salvage timber lying on the ground of the 19.6-acre tract. Vines contacted the individual in charge, who advised him Rester had given him permission to cut the timber. Vines informed the individual that Greenleaf had title to the property, and all timber cutting ceased.

¶3. In November 2012, Rester and Davis, who are siblings, filed a complaint in the Pearl River County Chancery Court to confirm title and for adverse possession of the disputed

---

[1] *Rester v. Greenleaf Res. Inc.*, 160 So. 3d 743 (Miss. Ct. App. 2015) (*Rester I*).

property. They claim to have inherited this property from their father, Robert Davis (Robert), and the property had been held by their family since 1919.[2] Rester and Davis contend that over the past nearly 100 years, the Davis family has used the property to homestead, farm, and harvest timber, and for recreation.

¶4. Greenleaf answered and counterclaimed to remove the cloud and to quiet and confirm title to the 297.61-acre parcel, including the disputed property. In November 2013, a bench trial ensued. Several witnesses testified for both parties.[3] On February 3, 2014, the chancellor held that Rester and Davis failed to meet their burden of proof for more than one of the necessary elements of adverse possession and dismissed the complaint, granting Greenleaf immediate possession and occupancy of the 19.6 acres. The court, however, only examined the time period since 2004, when the property had been acquired by Greenleaf. Rester and Davis appealed to this Court, which held that further examination was needed prior to Greenleaf's purchase of the property in 2004. On remand, the chancellor determined, on the same record, that adverse possession had not been established for a continuous ten-year period prior to 2004. Rester and Davis timely appealed.[4]

---

[2] A few years earlier Robert had acquired title to a five-acre parcel of property adjacent to the disputed property. Davis testified that his relatives (the Dedeauxs) have record title to the five acres, which lies south of the 19.6 acres and contains a family cemetery.

[3] A detailed description of witness testimony and exhibits entered into evidence can be found in *Rester I*, 160 So. 3d at 744-47 (¶¶4-12).

[4] The Mississippi Supreme Court consolidated this case with the prior opinion's case for record purposes upon motion by both parties.

**STANDARD OF REVIEW**

¶5.    This Court's standard of review in examining a chancellor's decision is limited. *Cook v. Robinson*, 924 So. 2d 592, 594 (¶9) (Miss. Ct. App. 2006) (citations omitted). The chancellor's findings of fact will be accepted as long as "the record reasonably supports those findings." *Id.* The chancellor's findings may only be disturbed if she "abused [her] discretion, was manifestly wrong [or] clearly erroneous, or applied the wrong legal standard." *Biddix v. McConnell*, 911 So. 2d 468, 474-75 (¶17) (Miss. 2005) (citation omitted). As the trier of fact, the chancellor evaluates the sufficiency of the evidence based on the credibility of the witnesses and the weight of their testimony. *Cook*, 924 So. 2d at 594 (¶9). Questions of law are reviewed de novo. *Id.*

**ANALYSIS**

¶6.    Rester and Davis contend that the chancery court erred in finding that they had not established title to the property through adverse possession.

¶7.    Adverse possession is defined by statute as follows:

> Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under disability of minority or unsoundness of mind the right to sue within ten (10) years after the removal of such disability, as provided in [Mississippi Code Annotated] [s]ection 15-1-7. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one (31) years.

Miss. Code Ann. § 15-1-13(1) (Rev. 2012). The Mississippi Supreme Court has established six elements that must be met for a claim of adverse possession: "the property must be (1)

4

under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Taylor v. Bell*, 87 So. 3d 1134, 1137 (¶8) (Miss. Ct. App. 2012) (quoting *Cook*, 924 So. 2d at 595 (¶11)). "The burden of proof is on the adverse possessor to show by clear and convincing evidence that each element is met." *Id.* (quoting *Ellison v. Meek*, 820 So. 2d 730, 734 (¶13) (Miss. Ct. App. 2002)). The ultimate question is "whether the possessory acts relied upon by the would[-]be adverse possessor are sufficient to put the record title holder upon notice that the lands are held under an adverse claim of ownership." *Magee v. Garland*, 799 So. 2d 154, 157 (¶9) (Miss. Ct. App. 2001) (citations omitted).

¶8. Testimony as to the early possession of the disputed property prior to Greenleaf's purchase establishes the following facts. Davis testified he was born in 1926 in a log house located on the disputed property. Three or four years later his family moved to Magnolia, Mississippi, where his family rented a house for two to four years. They moved back to Pearl River County, but did not live on the 19.6 acres. Eventually, the house was torn down. Testimony about Robert's activities indicated that from time to time the family planted crops, such as corn and cucumbers, on the land, but no specific dates were given. Davis moved away from Pearl River County in 1955, and Robert died in 1966. Rester claims that her brother, Davis, and father built a fence around the 19.6 acres, but neither she nor Davis could provide any dates. Davis testified that he helped his father repair the fence in 1939 or 1940.

¶9. Rester and Davis argue that the Davis family established a hostile, adverse claim to the tract that excluded others, primarily because the land had been fenced since their

5

childhood. Further, Herbert Gentry testified that from 1960 to 1982, when he managed Crosby's land, including the disputed tract, the Davis family was adamant about excluding others, including him, from the property due to the fence. The chancellor, however, found "credibility problems" with Gentry's testimony.

¶10.    Regarding the elements of actual or hostile possession, actual possession has been defined as "effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses." *Blankinship v. Payton*, 605 So. 2d 817, 819-20 (Miss. 1992). Possession is adverse when the holder intends to claim title notwithstanding that the claim is made under a mistaken belief that the land is "within the calls of his deed." *Askew v. Reed*, 910 So. 2d 1241, 1244 (¶9) (Miss. Ct. App. 2005) (quoting *Metcalfe v. McCutchen*, 60 Miss. 145, 154 (1882)).

¶11.    The chancellor found there was insufficient evidence of actual or hostile use of the land by Rester and Davis continuously for ten years. Gentry, a former forester for St. Regis Paper Company from 1960 to 1982, testified as the plaintiffs' lead witness. As a forester, he was given a "squatters list" every year "from surveyors and [Crosby's] land people." He was directed not to disturb the listed property. The chancellor, however, discounted Gentry's testimony. She found it had "credibility problems due to the time that has lapsed," and he "had a tendency to lump all 'squatters' on the list into the same category." Kent Robbins, a witness for the defendant, who managed the Crosby lands after Gentry from 1982 to 2007, testified that nobody had advised him of a claim for adverse possession, and if they had, he would have removed the squatters. The chancellor concluded there was "no doubt that there

were periods that [Robert] and/or his children had possession, but hostile occupancy for [ten] years with notice, whether actual or implied, was not established by clear and convincing evidence." While we might not have made the same credibility determination as the chancellor, we cannot say that the chancellor abused her discretion in finding the evidence insufficient to show hostile possession by the Davis family.

¶12. Beyond mere possession, an adverse possessor "must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest." *Blankinship*, 605 So. 2d at 820 (quoting Walter G. Robillard & Lane J. Bouman, *A Treatise on the Law of Surveying and Boundaries* § 22.08 (5th ed. 1987)). "Sporadic and temporary activity on the property is insufficient to provide notice of an adverse claim." *Sturdivant v. Todd*, 956 So. 2d 977, 989 (¶37) (Miss. Ct. App. 2007) (abrogated on other grounds).

¶13. The chancellor found conflicting testimony regarding the open, notorious, and visible element. Gentry testified that people in the community referred to the tract as the "Rob Davis property." Yet Robert indisputably owned five acres of property adjacent to the tract in dispute, and most of the witnesses did not know where the adversely possessed property line was located. For example, James Myrick, who had allegedly used the property for recreation activities sporadically since 1973 with Rester's son, testified he had been swimming in the river on this property; however, the nearby river does not actually adjoin the 19.6-acre tract. Additionally, Hershel Ladner, who was born and reared in the surrounding community and had been familiar with the property "ever since [he could] remember," testified he thought

7

the Dedeaux cemetery was on the disputed property, but it is on the adjoining five-acre parcel. Ladner was also unsure if the old Davis family house was on the property. We cannot find the chancellor abused her discretion in ruling that the evidence was insufficient to establish open, notorious, and visible possession.

¶14. Rester and Davis argue that the Davis family continuously occupied and controlled the disputed property since Robert acquired the five-acre tract in 1915. Davis testified that his father built a house "not thinking about property lines," and even when the family did not live on the property, they controlled it. Additionally, they argue that Gentry's testimony established this element when he stated that from 1960 until 1982 he viewed the property as possessed and owned by the Davis family.

¶15. The controlling statute, section 15-1-13(1), requires ten years of "occupancy" for adverse possession. Even though witnesses testified that the Davises had built a log house on the property years ago, the chancellor found no evidence the Davis family had resided on the property for ten consecutive years. Davis testified he was born on the property in 1926, but the family moved three or four years later to Magnolia. The family rented the house out for three to four years. The chancellor found this was the strongest evidence of ownership, but insufficient to establish ten consecutive years of ownership. We agree. The chancellor did not find Gentry's testimony credible, and we cannot find she abused her discretion in doing so.

¶16. Rester and Davis argue that the element of exclusive possession was established by testimony about fencing, cultivating crops, and running livestock on the disputed property,

8

as well as renting their home after they moved. "Exclusive possession evinces 'an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising dominion of a sole owner.'" *Wicker v. Harvey*, 937 So. 2d 983, 995 (¶40) (Miss. Ct. App. 2006) (quoting *Rawls v. Parker*, 602 So. 2d 1164, 1169 (Miss. 1992)).

¶17. The chancellor found the evidence showed the plaintiffs did not regularly visit or use the property. Even when they did live in the house on the property, its use was sporadic. The chancellor did not abuse her discretion in finding the use of the property for recreation or rental purposes was not exclusive.

**CONCLUSION**

¶18. According to this Court's instructions in *Rester I*, the chancellor made a careful reexamination of the evidence prior to the time that Greenleaf purchased the property. After reviewing the record, and in accordance with our limited standard of review, we find no reversible error in the chancellor's finding that Rester and Davis did not establish adverse possession by clear and convincing evidence.

¶19. **THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.**

9