## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00778-COA

**FRANKLIN LAND ASSOCIATES, LLC**                    **APPELLANT**

**v.**

**S.L. SETHI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/23/2017 |
| TRIAL JUDGE: | HON. JON M. BARNWELL |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER DANIEL MEYER |
| | JAHVIAH DYJUAN COOLEY |
| ATTORNEYS FOR APPELLEE: | WEBB FRANKLIN |
| | SAM N. FONDA |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 01/29/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, C.J., BARNES AND CARLTON, P.JJ.**

**BARNES, P.J., FOR THE COURT:**

¶1.    Franklin Land Associates LLC (Franklin), the Buyer, and S.L. Sethi, the Seller, entered into a real-estate purchase agreement (Agreement) in 2010. After two years and several amendments, Franklin terminated the Agreement in April 2012, claiming it failed to receive the necessary governmental approvals needed for the development of the property and was, therefore, entitled to a return of the $160,000 held in escrow. A lawsuit was filed to determine which party was entitled to the escrow funds. The Leflore County Chancery Court determined that John Dinkins, Franklin's agent, had authority to bind the company to the Sixth Amendment to the Agreement, which permitted Franklin to receive a complete

refund of the escrow money if it failed to receive the necessary onsite and offsite governmental approvals reasonably deemed necessary by Franklin. However, because Franklin elected to withdraw its applications prior to the governmental authorities' decisions, the chancery court held that Franklin's termination of the Agreement was without justification, and Sethi was entitled to the escrow money. Franklin appeals the judgment. Finding no error, we affirm.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

¶2. On April 27, 2010, Franklin and Sethi entered into a real-estate contract for the purchase of approximately sixty acres of land in Madison County, Mississippi.[1] The Agreement provided Franklin the exclusive right to inspect the property for the development of a high-end shopping center and required Franklin to deposit $50,000 in earnest money with the escrow agent, Whittington, Brock and Swayze P.A. (WBS). Several amendments were made to the Agreement. The First Amendment, on May 26, 2010, required Franklin to deposit an additional $50,000 in earnest money, modified paragraph 16 of the agreement, and extended the property inspection period.[2]

¶3. On August 24, 2010, Franklin terminated the Agreement in accordance with its terms. The following day, the parties executed a Reinstatement and Second Amendment of the

---

[1] The purchase price was $326,700 per acre.

[2] Paragraph 16 concerned the Buyer's conditions for closing and noted that if the Buyer elected to terminate the Agreement prior to the end of the inspection period, it would receive a refund of the earnest money.

2

Agreement, which extended the inspection period until November 30. Three months later, on November 29, Franklin again terminated the Agreement, and the escrow funds were returned to Franklin. On January 11, 2011, the parties executed a Reinstatement and Third Amendment of the Agreement, requiring Franklin to deposit the previously refunded escrow ($100,000) with WBS, and the inspection period was extended to June 30, 2011. On June 6, the parties executed a Fourth Amendment, extending the inspection period to October 31.

¶4. The parties executed a Fifth Amendment on October 28, 2011. The amendment extended the inspection period to April 30, 2012, and required Franklin to deposit an additional $60,000 into escrow at intervals of $20,000 a month. Paragraph 8.C of the agreement was also amended to provide:

> Notwithstanding any provision of the foregoing:
>
> 1) If, on or before November 21, 2011, Buyer has not terminated the Agreement, the Earnest Money shall become non-refundable, but at Closing shall be applicable to the Purchase Price, provided, however, that the Earnest Money shall be fully refundable during the remainder of the Inspection Period if Buyer terminates the Agreement due to i) default by Seller; or ii) the condition of the title to the Property, or any current exceptions to title as reflected in the title commitment or on the Survey, or any requirements to the title commitment which are not satisfied; or iii) *Buyer has not received all necessary governmental approvals and agreements deemed necessary by Buyer for Buyer's intended development and acquisition of the Property, as determined in Buyer's sole discretion*.

(Emphasis added).

¶5. In March 2012, Dinkins, who had been meeting and negotiating with Sethi on the

3

terms of the Agreement and the amendments for the past two years, brought a proposed Sixth Amendment to Sethi signed by George Tomlin, Franklin's Chief Manager. In the proposed amendment, Paragraph 8.C of the Agreement was amended as follows:

Notwithstanding any provision of the foregoing:

1) All Earnest Money deposited shall become non-refundable, but at Closing shall be applicable to the Purchase Price, provided, however, that the Earnest Money shall be fully refundable during the remainder of the Inspection Period if Buyer terminates the Agreement due to i) default by Seller; or ii) the condition of the title to the Property, or any current exceptions to title as reflected on the title commitment or on the Survey, or any requirements to the title commitment which are not satisfied; or iii) Buyer has not received all necessary *on-site and off-site* governmental approvals *reasonably* deemed necessary by Buyer for Buyer's intended development of the Property, as determined in Buyer's sole discretion.

(Emphasis added). After Dinkins and Sethi discussed the terms, a handwritten interlineation was added to the Sixth Amendment stating that Franklin agreed to pay additional earnest money of $100,000 beginning May 1. Sethi signed the amendment and initialed the handwritten portion on March 16, 2012.

¶6. On April 27, 2012, Franklin sent a letter to Sethi terminating the Agreement. Claiming it had "not received all necessary governmental approvals and agreements deemed necessary . . . for [its] intended development and acquisition of the [p]roperty, as determined in [its] sole discretion," Franklin demanded a refund of the earnest money. Sethi objected to Franklin's request for a refund of the funds, asking that Franklin specify which governmental approvals had been denied.

4

¶7.     On May 27, 2012, the escrow agent, WBS, filed a complaint for interpleader with the chancery court, requesting a ruling on who was entitled to the escrow funds.[3] Franklin filed an answer and cross-claim against Sethi, demanding the return of its earnest money and legal fees incurred as a result of the dispute. On April 22, 2014, Franklin filed a motion for partial summary judgment, arguing that the Fifth Amendment to the Agreement was controlling because Franklin never accepted the additional handwritten interlineation to the Sixth Amendment. In response, Sethi "concede[d] that the added language by Sethi was never agreed to by Franklin because it elected to terminate because of financing problems," but asserted that both Sethi and Franklin "accepted and agreed to the language in the typed or printed portion of the Sixth Amendment."[4] A hearing was held in chancery court on April 7-8, 2015.

¶8.     On January 10, 2017, the chancery court entered its order. The court determined that Dinkins acted with apparent authority as Franklin's agent in negotiating the Sixth Amendment with Sethi; therefore, the Sixth Amendment contained the controlling contract language. The chancery court found that Sethi was entitled to the $160,000 in escrow money because Franklin "essentially began to abandon the development project several months before the termination letter" and, therefore, terminated the Agreement without justification.

[3] WBS also filed a motion requesting that the chancery clerk accept the funds and release it as escrow agent. With no objection by the parties, the court granted WBS's motion.

[4] Thus, the additional earnest money in the Sixth Amendment was never at issue in this case.

¶9. On January 13, 2017, the chancery court entered a final decree and money judgment to comply with its order, awarding Sethi $160,000. On January 23, 2017, Franklin filed a motion to alter or amend the judgment. That same day, the court entered a second final decree and judgment; so Franklin filed a second motion to alter or amend the judgment on February 2. On May 4, 2017, the chancery court denied Franklin's motions. Aggrieved, Franklin appeals.

## STANDARD OF REVIEW

¶10. Our Court's standard of review of a chancery court's decision is limited. *Rester v. Greenleaf Res. Inc.*, 198 So. 3d 472, 474 (¶5) (Miss. Ct. App. 2016) (citing *Cook v. Robinson*, 924 So. 2d 592, 594 (¶9) (Miss. Ct. App. 2006)). A court's findings will not be disturbed on appeal "when supported by substantial evidence unless the chancery court abused its discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Dobson v. Dobson*, 179 So. 3d 27, 29 (¶5) (Miss. Ct. App. 2015). Questions of law are reviewed de novo. *Rester*, 198 So. 3d at 474 (¶5).

## DISCUSSION

¶11. In the proceedings below, the parties disputed whether the Fifth or Sixth Amendment contained the Agreement's controlling language, and the court devoted a significant portion of its analysis to whether Dinkins had authority to negotiate and execute the Sixth Amendment to the Agreement on Franklin's behalf. As discussed, Dinkins brought Sethi the proposed Sixth Amendment already signed by Franklin's representative, Tomlin. The

6

amended language to Paragraph 8.C to the proposed Sixth Amendment added the following emphasized terms—"all necessary *on-site and off-site* governmental approvals *reasonably deemed necessary by [Franklin] for [Franklin's] intended development of the Property, as determined in [Franklin's] sole discretion.*" On appeal, however, Franklin claims that the court's ruling on the agency issue was "not outcome determinative" and the "minor difference" between the Fifth and Sixth Amendments "does not change the analysis." We agree. Neither party has challenged which approvals were deemed reasonably necessary. Accordingly, the only issue to be addressed by this Court is whether the chancery court erred in finding that Franklin terminated the Agreement without justification and in awarding the escrow money to Sethi.

¶12. The chancery court concluded that Franklin failed to show its termination of the Agreement "was justified because it did not obtain the necessary governmental approvals." The mayor of Madison, Mary Hawkins, averred that the issue with the property concerned financing of the proposed development, not the governmental approvals. In an October 24, 2012 affidavit, Mayor Hawkins testified:

> The City of Madison cooperated in every reasonable way with the developers in seeing that [the property] received all of the necessary onsite and offsite regulatory approvals necessary to move forward with the project. The City worked with the developers to address and resolve routine regulatory and design issues and *was in a position to approve all of the necessary regulatory requirements for the development had [Franklin] not withdrawn from the application process.* The City of Madison never refused to provide the development with the necessary onsite and offsite regulatory approvals and at all times attempted to and did cooperate with the developers through the regulatory application and review process.

> . . . .

> It was only after the negotiations concerning the [tax increment financing (TIF)] did the developers elect to withdraw from the proposed development of Dr. Sethi's property. From my involvement with the representatives of the developers, it appeared that the reason for their abandonment of this important development to the City of Madison was financing and not regulatory approval.

(Emphasis added). The mayor was deposed on September 13, 2013, and reiterated her belief that Franklin would have had no issues with obtaining the governmental approvals and that the development "fell apart" due to financing issues. Additionally, the record contains an affidavit by Jerry Cook, the Director of Economic and Community Development of the City of Madison, attesting that all "onsite and off site regulatory requirements of the City of Madison for Franklin to develop the proposed Madison Promenade on lands owned by Dr. S. L. Sethi were approved or could have been approved had the developers not abandoned the development during the application and approval process."

¶13.    H.D. Brock, the escrow agent, testified in his affidavit that City of Madison officials had told him "Franklin's claim that it was unable to obtain the necessary onsite or offsite governmental approvals is untrue" and the reason for the termination of the Agreement "was because Franklin could not obtain the necessary TIF financing agreement with the City." At the hearing, Brock further stated: "I felt very confident that this project was moving along the way it should be and that all the approvals were in place or were available," and he knew of no reason why Franklin could not have gotten the necessary approvals.

¶14.    Moreover, Franklin admitted in its "Itemization of Facts and Trial Brief" that it had

8

met with Mayor Hawkins and Cook several times to request a TIF agreement to help offset the land price, site work, and infrastructure costs associated with the development. However, the initial version of the agreement proposed by the City was not financially viable, primarily due to the fact that the Mayor conditioned the financing on her "full unconditional and absolute ability to approve or deny any and all tenants in the planned shopping center." Therefore, Franklin was not able to reach an agreement with the City of Madison that would work for the development, its anchor tenant (Target), or its construction lender. As the chancery court noted in its opinion, the TIF agreement was not "contemplated either by the [Agreement] as amended by the Fifth or the Sixth Amendment," and Franklin does not dispute this on appeal.

¶15. Sethi argues that Franklin "had a duty to use good faith in obtaining the necessary governmental approvals." "Mississippi ascribes to the view that all contracts contain an implied covenant of good faith and fair dealing." *Morris v. Macione*, 546 So. 2d 969, 971 (Miss. 1989). Franklin did not dispute that it withdrew its applications. Finding that a prerequisite to the termination of the Agreement was the pursuit of the governmental approvals, the chancery court concluded:

> Franklin withdrew [its] applications for governmental approvals before a decision was made by the appropriate governmental authorities, in many instances, and may have failed to pursue other governmental authorities that it deemed necessary. To hold otherwise would be to sanction abandonment of a contract without recourse to an aggrieved party by forgiving an explicit duty under the contract.

We agree with the court's analysis. It is a "principle of fundamental justice that if a promisor

9

is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." *Id.* Under this "doctrine of prevention," "when a party to a contract causes the failure of the performance of an obligation due, it cannot in any way take advantage of that failure." 13 *Williston on Contracts* § 39.3 (4th ed. 2013). Here, trial testimony presented substantial evidence that Franklin itself prevented the attainment of the governmental approvals that it later deemed necessary when it prematurely withdrew several applications from the city—applications that city officials testified would have been approved.

¶16. Finding substantial evidence to support the chancery court's holding, we affirm.

¶17. **AFFIRMED.**

**GRIFFIS, C.J., CARLTON, P.J., WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. McDONALD, LAWRENCE AND McCARTY, JJ., NOT PARTICIPATING.**